[No. S011881. Dec. 31, 1990.]

GAYLE DRAPER, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

James H. Davis, James A. Quinn, Riley & Associates and William H. Waysman for Plaintiff and Appellant.

James K. Hahn, City Attorney, John T. Neville and Richard M. Helgeson, Assistant City Attorneys, and Katherine J. Hamilton, Deputy City Attorney, for Defendants and Repondents.

OPINION

MOSK, J.—In this case we are called on to decide whether plaintiff, physically unable to file a claim against a governmental entity within 100 days of an accident (Gov. Code, former § 911.2),[1] may be denied relief from the Government Code's claim-filing requirements on the ground that an attorney, purporting to act on her behalf, filed a timely claim against a governmental entity different from the entity plaintiff now seeks to hold liable. The Court of Appeal affirmed the trial court's denial of relief. On the peculiar facts of this case, we reverse.

Plaintiff, who was 19 years old in 1987, was seriously injured on June 11 of that year when she was struck by a car driven by a high school student in a crosswalk in the Panorama City district of Los Angeles. The doctor who treated plaintiff from the time of her admission to the hospital on June 11 immediately after the accident until she was transferred to another hospital on July 22 stated that she was both physically and mentally incapacitated during the entire time she was under his care. Another declaration, from the doctor who cared for plaintiff during her hospital stay from July 22 until her discharge the following January, stated that plaintiff suffered severe head injuries and multiple fractures in the accident, was totally dependent on others, had severe cognitive deficits and difficulty speaking, and was both physically and mentally incapacitated well beyond the 100 days following the accident. The supporting medical records reveal that plaintiff was in a coma until the end of July, and for some period of time thereafter could only give "yes-no responses" with "lap board communication" and could "identify simple objects" but could not talk. She was completely dependent on others for her physical needs, such as feeding and grooming, and she was immobile.

At the time of plaintiff's accident, former section 911.2 provided that a personal injury claim against a governmental entity must be filed within 100

---

[1] All further unlabeled statutory references are to this code.

days of the accrual of a cause of action.[2] An action for damages cannot be filed against such an entity unless the claim is first presented to it. (§ 945.4.) Sections 911.4 and 911.6 set forth a procedure for seeking leave to present a late claim. On November 4, 1987, less than two months after the one hundred-day claim-filing period had elapsed, plaintiff applied for such relief to the City of Los Angeles, the Los Angeles Unified School District, and several other governmental units. She alleged that the accident was caused by defects in the condition of the intersection, and that she had not filed a timely claim because she was severely injured in the accident, suffered permanent brain damage, was unconscious and hospitalized for a long time, and did not have the assistance of counsel. The petitions were denied by operation of law. (§ 911.6, subd. (c).)

Section 946.6 provides that when an application for leave to present a late claim to a governmental entity is denied, a petition for relief from the claim-filing requirement may be filed with the court. Relief is conditioned on the presentation of the application to file the late claim within a reasonable time, not to exceed one year after accrual of the cause of action, and on satisfaction of one of the additional requirements of the section. We are concerned here with the requirement embodied in subdivision (c)(3) of section 946.6 (hereafter subdivision (c)(3)), which provides as a condition for relief that the "person who sustained the alleged injury, damages or loss was physically incapacitated . . . [during the claim-filing period] and by reason of such disability failed to present a claim during that time."

Plaintiff sought relief under this provision on January 28, 1988, substantially less than one year after the accident. The petition was supported by her attorney's declaration that plaintiff suffered severe brain injuries in the accident and was not released from the hospital until after the 100-day claim-filing period. The city and the other defendants opposed the petition on the ground that it was not supported by competent medical evidence. In response, plaintiff's attorney filed a declaration from a doctor who began treating plaintiff six weeks after the accident, stating that she had suffered brain damage and other injuries. On March 28, the court continued the hearing to enable plaintiff to file supplemental declarations regarding her medical condition.

Prior to the date of the continued hearing, the Los Angeles Unified School District, by a special appearance, filed an opposition to the petition for relief from the claim-filing requirements, pointing out that a claim had previously been filed on plaintiff's behalf against the school district on

---

[2] In 1987 the Legislature extended section 911.2's filing period to six months after the cause of action accrues, for acts or omissions occurring on or after January 1, 1988. (See *County of Los Angeles* v. *Superior Court* (1990) 223 Cal.App.3d 163, 165 [272 Cal.Rptr. 600].)

August 3, 1987, by one George L. Hecker, an attorney, and had been rejected on September 11. The supporting documents indicated that the district had notified plaintiff's present attorney of the rejection in November 1987.

On the morning of June 6, 1988, the date set for the continued hearing, plaintiff's attorney did not appear, nor did plaintiff file any supplementary medical evidence. The court thereupon denied the petition, ruling that plaintiff failed to establish that her injuries were the cause of her failure to file a timely claim.

On June 15, plaintiff's attorney moved for reconsideration of the June 6 order on the ground of excusable mistake and neglect. (Code Civ. Proc., § 473.)[3] On July 7, the court denied the motion for reconsideration. It ruled that the claim filed by Attorney Hecker on plaintiff's behalf during the 100-day claim-filing period against the Los Angeles Unified School District demonstrated that any failure to file a claim against the city and other governmental units within that time was not caused by disability.[4] On August 5, 1988, plaintiff filed a notice of appeal from both the order denying relief from the claim-filing requirements and the order denying reconsideration of that order.

The Court of Appeal, although affirming both orders, expressed the view that plaintiff had presented "powerful evidence" that she was seriously disabled during the 100 days following the accident. However, it held that the trial court acted within its discretion in ruling that the filing by Hecker of a timely claim on her behalf against the Los Angeles Unified School District indicated that plaintiff's disability was not the reason for her failure to file a timely claim against the other public entities.

The city does not contend that plaintiff failed to comply with the requirement of section 946.6 that she apply to file a late claim reasonably soon after her cause of action accrued. Our concern is whether plaintiff established that she was disabled during the 100-day claim-filing period and, if so, whether her disability explained her failure to file a timely claim. As will appear, we hold that in light of the information the court had before it at the June 6 and July 7 hearings, plaintiff satisfied the requirements of

---

[3] Code of Civil Procedure section 473 provides in part, "The court may, upon such terms as may be just, relieve a party or his or her legal representative from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

[4] The court was also of the view that plaintiff's attorney did not show that his failure to appear at the June 6 hearing or to file the supplemental medical declarations before that hearing was excusable.

subdivision (c)(3) that she demonstrate both her incapacity and the fact that her disability was the cause of her failure to file a timely claim.

■ The rule that remedial statutes are to be liberally construed (*Bettencourt* v. *Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 273-274 [228 Cal.Rptr. 190, 721 P.2d 71]; *Viles* v. *State of California* (1967) 66 Cal.2d 24, 32-33 [56 Cal.Rptr. 666, 423 P.2d 818]) applies with particular force when, as here, strict application of a statutory requirement will result in barring the claim of an incapacitated plaintiff and ultimately deny her a day in court.

The Legislature and the courts are concerned with protecting the rights of incapacitated persons, as with those of minors who cannot act for themselves. For example, a minor is not held accountable for the negligence of an attorney or parent who fails to file an application for a late claim on the minor's behalf within a reasonable time after accrual of the cause of action. (*Hernandez* v. *County of Los Angeles* (1986) 42 Cal.3d 1020, 1029 [232 Cal.Rptr. 519, 728 P.2d 1154], citing *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 479-480 [58 Cal.Rptr. 249, 426 P.2d 753]; *Williams* v. *Mariposa County Unified Sch. Dist.* (1978) 82 Cal.App.3d 843, 850-852 [147 Cal.Rptr. 452].) And a mentally incapacitated person may postpone the filing of an application to present a late claim until a guardian or conservator has been appointed to act on his or her behalf. (§ 911.4.) Thus in *Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468, 480, we construed a claims statute in favor of a minor, relying on "the policy of the law toward liberal construction of remedial statutes for the protection of persons within their purview and the modern trend of judicial decisions in favor of granting relief unless absolutely forbidden by statute."

■ With regard to the first prong of the test set forth in subdivision (c)(3), we conclude that the evidence, viewed in light of the whole record, establishes in this case that plaintiff was incapacitated during the claim-filing period. It could be contended that the evidence plaintiff presented in her motion for relief under section 946.6 and her reply to the city's opposition to that motion was somewhat conclusory. Nevertheless, given the unusual facts of this case, we believe the trial court should have paid greater heed to the declaration of plaintiff's doctor that she was severely injured and brain damaged as a result of the accident. Although the doctor's declaration was not as complete as it could have been because it did not specify the precise time during which plaintiff was unable to act on her own behalf,

on this record we conclude that the rule of liberal construction of remedial statutes should operate to grant plaintiff relief.[5]

The city contends that even if the record shows plaintiff was incapacitated, she failed to satisfy the second requirement of subdivision (c)(3), i.e., that her disability caused her failure to timely file her claim. The city argues that the fact Hecker filed a claim on her behalf during the 100-day period provides countervailing evidence that her incapacity did not cause her omission, and the trial court was justified in so finding.

Unfortunately, the record of the trial court's opinion on this point is unclear. The court may have believed that the weight of the evidence showed that plaintiff's injuries did not prevent her from personally authorizing Hecker to file a claim on her behalf. Or it may have inferred that someone other than plaintiff, with implied authority to do so, had retained Hecker for that purpose. We do not know. Plaintiff's attorney stated at the hearing on the motion for reconsideration that he was not certain of the relationship between Hecker and plaintiff—although he thought Hecker was a family friend—and he pointed out there was no evidence that Hecker had actually been retained to file the claim. He then sought a continuance to ascertain the facts, but the court denied the request. It ruled that Hecker was acting as plaintiff's attorney when he filed the claim, and that because she had not repudiated his actions she was bound by them.

In light of the whole record of this case we are reluctant to bar plaintiff's claim on the basis of this contention. On August 3, 1987, the date Hecker filed the claim against the Los Angeles Unified School District, it is undisputed that plaintiff was just emerging from a long coma and that her ability to reason was severely impaired. In such circumstances it is inconceivable that she could have authorized the filing of the claim. Nor can we uphold the ruling on the basis of an assumption that some unnamed person retained Hecker to file a claim for plaintiff.

Under subdivision (c)(3), it is the incapacity of the person who failed to file a claim that is in issue. The structure of the sentence requires this conclusion: it provides that an application for relief under section 946.6 shall be granted if "*The person* who sustained the alleged injury, damage or loss was physically or mentally incapacitated [during the claim-filing period] . . . and by reason of such disability failed to present a claim" within 100 days (italics added). The sentence obviously refers to *the injured person* as the person who is too disabled to file a claim. (See *Gonzales* v. *County of*

---

[5] In so holding, however, we reiterate that the evidence in support of the motion for relief from the claim-filing requirements was the minimum acceptable, and in less peculiar and compelling circumstances might well not suffice.

*Merced* (1963) 214 Cal.App.2d 761, 764-766 [29 Cal.Rptr. 675] [construing predecessor to § 946.6].) Construction of the subdivision in the manner the city advocates would require us to add words to the sentence so that the last clause would read, "and by reason of such disability the injured person or someone with authority to appoint another to act on the injured person's behalf failed to present a claim" within the 100-day period. We cannot thus rewrite the statute.

Contrary to the city's assertion, our construction of subdivision (c)(3) does not render superfluous the last clause of the provision ("and by reason of such disability failed to present a claim"). The subdivision is designed to assure both that the claimant was disabled during the filing period and that the disability was the reason the claimant could not file timely. A person can be disabled yet be able to file a timely claim. The decisions construing subdivision (c)(3) and its predecessor apply the disability provision in just this way: they analyze the extent of the injured person's disability and determine whether it was so great as to preclude filing a timely claim or authorizing someone to do so. For example, in *Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468, 474-475, we held that the fact the plaintiff consulted attorneys and dealt with insurance adjusters within the filing period was evidence that her failure to present a timely claim was not caused by her incapacity. (See also *Thompson* v. *County of Fresno* (1963) 59 Cal.2d 686, 689 [31 Cal.Rptr. 44, 381 P.2d 924]; *Lutz* v. *Tri-City Hospital* (1986) 179 Cal.App.3d 807, 811-812 [224 Cal.Rptr. 787]; *Baber* v. *Napa State Hospital* (1984) 154 Cal.App.3d 514, 518-519 [201 Cal.Rptr. 432]; *O'Brien* v. *City of Santa Monica* (1963) 220 Cal.App.2d 67, 76 [33 Cal.Rptr. 770]; *Pope* v. *County of Riverside* (1963) 219 Cal.App.2d 649, 652 [33 Cal.Rptr. 491].) Here, by contrast, there can be little doubt that plaintiff's incapacity prevented her from taking any such actions.

The result sought by the city would deny this seriously injured woman her day in court. We are not convinced the law requires such an unconscionable conclusion.

The judgment of the Court of Appeal is reversed with directions to reverse the orders appealed from with instructions to grant plaintiff the relief requested.

Broussard, J., concurred. Kennard, J., and Arabian, J., concurred in the judgment.

**EAGLESON, J.**—I respectfully dissent.

If an ounce of the milk of human kindness courses in anyone's veins, it flows in sympathy toward this grievously injured plaintiff.[1] She is a victim, however, not of the judicial process, but of incompetent counsel.

The true legal issue is nothing more and nothing less than the question of whether a trial court, faced with cursory and conflicting evidence, erred in concluding that plaintiff had failed to justify her untimely claim under the Tort Claims Act. (Gov. Code, § 900 et seq.) The lead opinion, however, proceeds as if the trial court had never decided this case. Applying the orthodox standard of appellate review, the only tenable conclusion is that the trial court did not err. The record, in condensed form, reveals as follows:

Plaintiff's petition for relief from the Tort Claims Act (the Act) was filed on January 28, 1988. Plaintiff's counsel (hereafter counsel) presented *no* medical evidence on which to grant relief—not a single declaration or document. All that he submitted was his own self-serving declaration, with his bare assertion that plaintiff had been incapacitated during the claim filing period.

In response to the City of Los Angeles's objection to the lack of evidence, counsel filed a brief and cursory (less than one page) declaration by one of plaintiff's treating physicians. It contained two relevant paragraphs, which stated that plaintiff had suffered "brain damage" and other injuries. This declaration did not contain any supporting facts and did not state that plaintiff had ever been incapacitated, nor was it supported by any medical records.

Rather than outright deny the petition, as it was entitled to do, the trial court, for plaintiff's benefit, continued the matter for almost three months (from March 28 until June 17) to allow her counsel to submit additional medical declarations in support of his contention that plaintiff had been legally incapacitated during the claim filing period. (At counsel's request, the continued hearing date was later changed to June 6.)

Despite the continuance, plaintiff's counsel failed to submit any additional evidence or *even to appear at the June 6* hearing. The trial court denied the petition for relief under Government Code section 946.6, subdivision

---

[1] For purposes of this opinion, I assume to be true the undisputed allegations of the serious nature of plaintiff's injuries.

(c)(3).[2] Its order stated, "Petition is denied without prejudice based on failure to establish medical injuries were cause of late claim."

The lead opinion concludes that this trial court order was erroneous. Not so. All that was before the trial court was the woefully inadequate physician's declaration described above. A trial court need not rely on such a declaration. (*Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 477 [58 Cal.Rptr. 249, 426 P.2d 753]; *Martin* v. *City of Madera* (1968) 265 Cal.App.2d 76, 81-82 [70 Cal.Rptr. 908].)

The only way the lead opinion can reach its result is to substitute its judgment for that of the trial court. Of course, doing so requires disregard for the long-established rule that a reviewing court must not substitute its judgment for that of the trial court on petitions to file late claims. " ' . . . Unless, ultimately, each case of this nature is to be decided by the Court of Appeal [or the Supreme Court] as if no trial court had ever acted on the petition, we must be careful to preserve the area of the superior court's discretion, and we must do this *in fact, as well as in words.*' " (*Harrison* v. *County of Del Norte* (1985) 168 Cal.App.3d 1, 7 [213 Cal.Rptr. 658], quoting *Shank* v. *County of Los Angeles* (1983) 139 Cal.App.3d 152, 156 [188 Cal.Rptr. 644], italics added.) The lead opinion in this case "in fact, as well as in words" allows the trial court *no* discretion. The standard of review is not even mentioned in the lead opinion. The lead opinion sub silentio ignores decades of California law and proposes the radical new rule that trial court determinations under section 946.6(c)(3) are subject in every case to de novo review in the appellate courts.

The lead opinion also errs by relying in large part on facts not before the trial court when it denied the petition under section 946.6(c)(3). Most of the relevant facts relied on by the lead opinion were submitted to the court in support of plaintiff's *subsequent* motion under Code of Civil Procedure section 473 to reconsider the denial of the petition. It is unwarranted and unfair to the trial court to say that it erred "in light of the whole record in this case" (lead opn., *ante*, at p. 508). The "whole record" was not before the trial court when it denied the section 946.6(c)(3) petition. Indeed, almost nothing was before the trial court.

If the lead opinion wishes to rely on evidence submitted in connection with plaintiff's subsequent motion for reconsideration under Code of Civil Procedure section 473, the lead opinion must address the threshold issue of

---

[2] All further section references are to the Government Code unless otherwise indicated. For convenience, I will hereafter refer to section 946.6, subdivision (c)(3) as section 946.6(c)(3).

whether *that* motion should have been granted.[3] If the trial court properly denied that motion, there is no way for the lead opinion to reach the issue of whether the initial petition should have been granted. The lead opinion, however, avoids this issue altogether. The reason becomes obvious when one reads the record. Plaintiff's counsel failed to offer any tenable just-ification for his failure to timely present evidence to support the petition under section 946.6(c)(3). I am compelled to state briefly the facts that the lead opinion omits on this threshold issue.

On June 15, 1988, plaintiff's counsel filed the motion for reconsideration under Code of Civil Procedure section 473 on the ground that his failures as to the June 6 hearing were due to problems in his office. Counsel made two separate arguments: (1) that he misunderstood the date of the hearing, and (2) that the failure to submit evidence was due to delays by doctors and a mistake by messengers. Counsel submitted several declarations in support of his request. They contain falsehoods which suggest that both claims are fabricated. Even viewed generously, they do not support the conclusion that counsel's shortcomings were excusable neglect. The trial court was familiar with its prior proceedings, had the opportunity to review these materials, and heard lengthy argument by counsel that allowed the court to judge his credibility. The lead opinion, however, concludes that the court exceeded the bounds of reason. Not so.

Counsel claimed that he failed to appear for the hearing because his "calendar clerk" incorrectly entered the hearing date as June 7, rather than June 6. This claim is at least debatable and thus subject to the trial court's discretion in two respects: (1) whether the alleged error really occurred, and (2) if so, whether it was excusable.

James Quinn, one of plaintiff's counsel, admitted in his declaration that he informed all parties by letter of the June 6 hearing date, and the docu-ments he filed with the court stated on their face that the hearing date was June 6. Similarly, defendant school district filed on May 25 a special appear-ance to oppose the petition for relief. The district's papers (which were served on counsel) also identified the hearing date as June 6. Perhaps most telling is the admission by counsel's law clerk, who had been assigned the task of preparing papers for the hearing. He admitted that he knew the hearing date was June 6, but claimed that he thought the 6th was a Monday rather than a Tuesday.

---

[3] I assume for purposes of discussion that the order denying reconsideration was appeal-able. The question of appealability of such an order has not been clearly resolved. (*Rojes* v. *Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1160-1161 [250 Cal.Rptr. 435].) I note that if every motion for reconsideration could give rise to an appeal, there would be no finality to any order under section 946.6(c)(3).

In short, there are ample indications in the record that counsel knew the correct hearing date of June 6. More important, even if there was an internal office error, the facts were such that the trial court was "within the bounds of reason" in finding the error was not excusable.

The facts are even more troublesome with respect to the failure to timely file papers. The declarations in support of reconsideration are replete with inaccuracies, some of which suggest outright misrepresentations by the declarants. Counsel and the facts tell the following conflicting stories:

Counsel contends that, after the hearing was continued on March 28, it took several weeks for him to obtain plaintiff's medical records and several weeks thereafter to obtain declarations from the two treating doctors. Conspicuously absent is any explanation of when counsel began his efforts. Nor are there any declarations by the copy service as to when it received counsel's request for records or by the doctors as to when the declarations were submitted to them. Counsel had the burden of establishing his claim of excusable neglect, but he was unwilling to provide the trial court with any documentation of his claim except for his own vague and self-serving declaration. The trial court could properly disregard his testimony. (*Tammen* v. *County of San Diego, supra*, 66 Cal.2d 468, 477.)

The record reflects that counsel delayed obtaining the declarations until the last minute. He states that he assigned the task to a law clerk. The clerk, in turn, states in his declaration that counsel informed him on May 31 of the hearing. This strongly suggests that the firm did not even begin to prepare the doctors' declarations until a week before the hearing.

Counsel's "administrative assistant," Fontaine, states that she sent the declarations by messenger to the doctors' offices on June 1. This is at least partly false. The messenger slips show that documents were not sent to Dr. Sauk until the next day—June 2. (There is no record of when the declaration was sent to Dr. Hedge.)

Fontaine also asserts that the signed declarations were returned to counsel's office on June 2 at 4 p.m. Untrue. Dr. Sauk did not even sign his declaration until June 3. Moreover, the messenger's records show that neither Sauk's nor Hedge's declarations were returned until June 3.

The claim of messenger misdelivery also appears to be false. Fontaine claims the *messenger* went to the wrong superior court—Los Angeles rather than Van Nuys. The messenger slip, which was provided by counsel, stated on its face that the delivery was to be to Los Angeles. Regardless of whether the incorrect address was written by counsel's employee or the messenger,

counsel should take responsibility for it. The misdelivery, if any, was his fault.

The purported timing of the delivery is also suspect in many respects. Fontaine states that she received the declarations on June 2 at 4 p.m. but delayed filing them until the next day because it was then too late to have them delivered to court by its 4:30 closing time. Aside from being false (because she did not get the declarations until June 3), this statement is puzzling. Fontaine goes on to state that the next day, June 3, she called the messenger at 3:25 p.m. and that he picked up the documents at 3:50 p.m. for delivery before the court closed at 4:30 p.m. If, as Fontaine claims, she had the documents the preceding day, it is unexplained why she waited until late the next day before calling a messenger. This is especially curious in light of her admission that, on the preceding day, one-half hour was too little time to deliver the documents to court. It is nearly impossible to travel from counsel's office in the mid-Wilshire area of Los Angeles to the Van Nuys courthouse in a period of 40 minutes (from 3:50 to 4:30) on a Friday afternoon.

The facts also belie the claim that the messenger was called at 3:25 and "picked up the documents at 3:50 P.M." The messenger's slip indicates that he had to wait at counsel's office *45 minutes* for the documents. In short, counsel has inadvertently revealed that the messenger was unable to leave his office until after the court had already closed. There was no messenger misdelivery.

Fontaine also asserts that when she learned of the purported misdelivery she directed the messenger to make the delivery the "first thing Monday morning." This is dubious. The messenger slip, apparently signed by Fontaine, states that she requested only "1/2-day (4 hours) delivery." This is a far cry from "first thing Monday morning."

Aside from these specific inconsistencies, there are two fundamental and troubling aspects to counsel's conduct. First, if he was (as he claims) having difficulty obtaining the doctors' declarations, he could easily have requested a brief continuance of the hearing. He chose not to do so. The simple truth is that counsel gambled on rushing to meet a deadline and he failed.

Second, as the trial judge pointed out, even if the papers had been filed on June 3 and the hearing had been set for June 7, the papers would have been untimely. Los Angeles Superior Court rules require that "all moving and supporting papers" be filed at least 15 *calendar* days before the hearing date. (L.A. Super. Ct. Law & Discovery Policy Manual, par. 145, p. 10,

emphasis in original.) If the papers had been filed on June 3, they would have been 11 days late for a June 7 hearing.

In short, the facts tell a tale of sloppy practice. There was no *excusable* neglect, just neglect. "Excusable neglect is 'that neglect which might have been the act of a reasonably prudent person under the same circumstances.'" (*Tammen* v. *County of San Diego, supra*, 66 Cal.2d 468, 476.) It is contrary to common notions of law practice to conclude that plaintiff's counsel acted with the prudence of a reasonable attorney. "It is not the purpose of remedial statutes to grant relief from defaults which are the result of inexcusable neglect of parties *or their attorneys* in the performance of the latter's obligation to their clients." (*Id.*, at p. 478, italics added.)

More important, though, the facts, even viewed most favorably to plaintiff, allow reasonable minds to differ on this question. It is unfair to the trial court to conclude that it acted "beyond the bounds of reason." The opposite is true. We should not substitute our judgment for that of the trial court. We should uphold the trial court's determination under Code of Civil Procedure section 473, as did the Court of Appeal.

As explained above, the lead opinion altogether avoids the issue under Code of Civil Procedure section 473. Assume, however, that the lead opinion could tenably conclude that the trial court erred and should have granted reconsideration. If so, there would still remain the question of whether the trial court "exceeded the bounds of reason" by declining to grant relief under section 946.6(c)(3) based on the evidence subsequently presented. The evidence does not support that conclusion.

Counsel relied on declarations by two treating physicians and portions of plaintiff's medical records. Her first physician, Dr. Sauk, submitted a discharge summary which indicates that plaintiff was comatose, or close to it, from the time of the accident until her discharge from Sauk's care on July 22, 1987. Of course, she was incapacitated until then.

Her second physician, Dr. Hedge, submitted a brief (two-page) declaration stating his opinion that she was "physically and mentally incapacitated" beyond the one hundred-day claim filing period. Hedge, however, failed to explain this broad conclusion. (As a preliminary matter, I note the question of plaintiff's *legal* incapacity under section 946.6(c)(3) was beyond the scope of Hedge's expertise.) Rather, Hedge submitted a discharge summary (DS). We must therefore consider that document to see if it sheds light on plaintiff's status during the claim filing period.

Before describing the DS, I emphasize that I do not dispute that plaintiff was grievously injured. The question before us is more narrow: Was she

legally incapacitated and, if so, for how long? I believe the DS is equivocal on this question. At the beginning of her care by Dr. Hedge, plaintiff was clearly in very poor shape. The initial physical examination showed that she could open and close her eyes on command but that she had a host of other serious problems. I would agree that the only reasonable conclusion is that *at that time* she was incapacitated. But what about later?

The DS says that by July 30, "Yes-no responses were reliable with lap board communication." She still was, however, mostly unable to communicate in any meaningful way. At an unspecified time thereafter (two paragraphs later in the DS), she had "responded well to the intensive rehabilitation program, and made slow but steady improvements along her hospital course. She began to vocalize and communication significantly improved thereafter . . . . Neurologically the patient improved with regards to motor power . . . ." Perhaps most significant is the statement that, "By the time of discharge the patient had made significant functional improvement. The patient was independent in oral communication, demonstrating improved linguistic flexibility, pragmatics, and her writing had improved to 70-80% legibility."

I believe the foregoing is critical. At some point prior to her discharge, plaintiff was able to communicate effectively with others, including family members or attorneys. If so, she was arguably no longer "incapacitated" within the meaning of section 946.6(c)(3). *The most telling omission from the lead opinion is plaintiff's own admission (in her application to file a late claim) that she hired her present counsel on October 23, 1987.* This was almost three months before her discharge from the hospital. Plaintiff also overlooks the fact that on August 3, 1987, a claim was filed on her behalf by attorney George Hecker against the Los Angeles Unified School District. The record does not reflect that she has disavowed this claim, which casts a reasonable doubt on her assertion that she was unable to communicate with an attorney during her hospitalization.

The lead opinion, however, avoids the dispositive issue of when plaintiff was no longer incapacitated. Section 946.6(c)(3) provides that in order for it to apply, the plaintiff must have been incapacitated *"during all the time"* allowed for filing a claim, i.e., the entire 100-day period. (Italics added.) Thus, this plaintiff must prove by a preponderance of the evidence that she was legally incapacitated from the date of the accident (June 11, 1987) until September 19, 1987. This determination cannot be made on the basis of the evidence submitted by plaintiff. She may have regained her capacity before that date. If so, she is not entitled to file a late claim.

Even if the record as a whole casts some doubt on the trial court's decision, that would not be sufficient to support the result reached by the

lead opinion. As explained above (*ante,* at p. 511), the correct issue is whether the trial court abused its discretion. The evidence does not remotely support the conclusion that the trial court abused its discretion.

In conclusion, one important point remains to be made regarding the lead opinion. The lead opinion emphasizes the "peculiar facts of this case" and reiterates that relief may not be warranted in future cases. (Lead opn., *ante,* at p. 504 and p. 508, fn. 5.) To the extent that the lead opinion is seeking to caution against any future reliance on this case, I agree on that point. This case is an aberration and should remain one.

I would affirm the judgment of the Court of Appeal.

Lucas, C. J., and Panelli, J., concurred.