[No. B217398. Second Dist., Div. Three. May 25, 2010.]

VERONICA BARRAGAN, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

## Counsel

The Law Offices of Koorosh K. Shahrokh and Koorosh K. Shahrokh for Plaintiff and Appellant.

Coleman & Associates, John M. Coleman and Charles K. Collins for Defendant and Respondent.

## Opinion

**CROSKEY, J.**—Plaintiff and appellant Veronica Barragan was rendered quadriplegic in a single-car rollover accident. She was hospitalized for three months following the accident, and virtually bedridden for the next seven months. Thereafter, she consulted an attorney, who determined that she may have a claim against respondent County of Los Angeles (County) for dangerous condition of the road where the accident occurred. Under the Tort Claims Act (Gov. Code, § 905 et seq.; TCA), an individual claiming personal injury must file a claim with the relevant governmental entity within six months. (Gov. Code, § 911.2.) As Barragan missed that deadline, she filed an application for leave to present a late claim, which was denied. She then filed, with the trial court, a petition for relief from the TCA filing requirements, arguing: (1) excusable neglect; and (2) physical and mental incapacity. The trial court denied the petition on the second ground, concluding that while Barragan was disabled, Barragan had not proven that her disability was the cause of her failure to file a timely claim. As to the first ground, the trial court indicated that it *would have found* that Barragan established excusable neglect, *but for* case authority that appeared to establish a strict rule that neglect cannot be excusable if the injured party made no effort to obtain counsel within six months. Barragan appeals. We conclude that the rule mandating an injured party attempt to obtain counsel within six months in

order to establish excusable neglect is not absolute, and may, instead, be overcome by evidence of disability. We therefore reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

At 9:00 p.m. on April 12, 2007, Barragan, a 33-year-old engaged mother of two, was in a single-car accident on Palmdale Boulevard, a rural roadway with one lane in each direction. Barragan's car went off the road, onto a dirt shoulder and up a rock and dirt embankment, where it rolled over repeatedly, coming to rest on the dirt shoulder. Barragan has no memory of the accident. The California Highway Patrol (CHP) report of the accident indicates that, at the scene, Barragan admitted drinking alcohol earlier. However, the laboratory was unable to analyze her blood sample, so a supplement to the CHP report indicates that there is not enough evidence to establish that Barragan was driving under the influence.[1] Barragan's vehicle was towed to a yard. At some point, Barragan's fiancé went to the yard and took photographs of the car. On August 16, 2007, the manager of the towing yard had the car dismantled and sold for scrap.[2]

After the accident, Barragan was immediately taken to the hospital. She had difficulty breathing and was intubated. A tracheostomy was performed. Barragan was paralyzed from the neck down, although she had slight motion of her upper extremities. Imaging showed significant spinal cord injury. Barragan was diagnosed with quadriplegia. Surgery was performed to stabilize her spine. By May 9, 2007, Barragan had undergone several surgical procedures, including the insertion of a gastrostomy tube for feeding. By this point, she had "some significant return of upper extremity function although she does remain quite compromised." She was transferred to a rehabilitation facility at a different hospital.

A few hours after her arrival at the rehabilitation facility, Barragan, who still had the tracheostomy tube in place, experienced respiratory distress. She was transferred to the intensive care unit and placed on a ventilator. Nonetheless, she was evaluated by a physiatrist, regarding a rehabilitation plan. Thomas Nasser, D.O., anticipated a minimum rehabilitation stay of four to six weeks, but more realistically, one of eight to 12 weeks. His consultation report indicated 12 areas of short-term concern, ranging from having Barragan's position in bed turned every two hours to avoid pressure wounds, to

---

[1] Barragan's hospital discharge summary states, "Ethanol intoxication, mild with admission alcohol level 0.023."

[2] The copy of the towing yard manager's declaration that is in the record on appeal is unsigned. It includes a note stating that the original declaration "has been forwarded to the Declarant for review and execution and an original executed copy will be provided in advance of the Hearing of this matter." While the parties appear to agree that the car has been destroyed, the record does not indicate that a signed declaration was ever submitted.

occupational therapy to regain some functions of daily living and self-care. Barragan was still taking 75 percent of her nutrition through the gastrostomy tube; the plan was to increase her oral intake until the tube was unnecessary. Barragan's bladder was being drained by a catheter; the plan was to discontinue the catheter and replace it with timed voids and intermittent catheterization, with the ultimate, "very difficult," goal of Barragan being able to catheterize herself independently, with the use of a pincher grasp tool. It was also planned that Barragan would begin bowel training, including "the usage of medications, manual evacuation, and timed bowel movements." Barragan was ultimately to be given a tenodesis splint "for functional usage of the upper extremities," and would eventually need a power wheelchair. Dr. Nasser indicated that, once Barragan was in the rehabilitation unit, she would require "extensive nursing care for family training, hygiene, self-care, and patient education with regards to medications."

The records are unclear as to when Barragan's respiratory problem was resolved and she was able to begin rehabilitation. She remained at the hospital until July 2, 2007. The discharge summary indicates some significant improvement in several areas. Both the tracheostomy tube and the gastrostomy tube had been removed, and Barragan was able to "feed orally at a near independent level." She could use tenodesis splints. She could not, however, transfer independently to her wheelchair and needed the use of a lift, which she was supplied for her use at home. She was also given a reacher, bedside commode, and power chair. In summary, the discharge notes stated that Barragan's "rehabilitative prognosis is somewhat poor for functional improvement although admission and discharge examinations did show that she did advance by approximately one level." She was noted to have "multiple social issues and require[] social support with home health and home therapies."

Once home, Barragan did not leave her bed for the first few months. In a declaration, Barragan described her condition upon returning home as "like a newborn baby." She could not do anything on her own, and could not even support herself to sit up. She required pillows to be wedged around her so that she would not fall over. She could not feed herself and, for the first weeks, had to be fed. Eventually, she learned how to use an elastic aid to help her hold a fork or spoon. By early 2008, Barragan could hold a toothbrush, using both hands, although she required assistance in putting the toothpaste on the brush. By May 2008, Barragan was able to dial a telephone, with difficulty, as she often pushes more than one button at once. She usually asks someone to help her dial the telephone.

Having others stretch her fingers to open her hands was, and continues to be, painful. Having her body manipulated to get her dressed or taken to the

car is also painful. For her pain, Barragan was prescribed Tylenol with codeine and Valium. The medications make it difficult for her to think clearly. Barragan experiences spasms at night, and has been prescribed a sleep aid, which often makes her groggy in the mornings. During the last half of 2007, Barragan was often depressed and would sometimes cry all day long.

There is no television in Barragan's bedroom. In February 2008, her fiancé helped her, for the first time, sit in a chair in another room and watch television. At that point, she saw a commercial for attorneys. She decided that she should contact an attorney with regard to her accident. Her fiancé helped her dial the telephone. As a result of that call, Barragan obtained counsel on February 12, 2008. According to Barragan, she did not decide to speak to an attorney until after she had "regained some of [her] strength after [her] long hospital stay and [her] rest period at home." Barragan did not then think that she might have a claim against the County; her only thought was perhaps pursuing the business that had sold her the car.[3]

Barragan's attorney sought the CHP report of the accident; he did not receive it until April 4, 2008. Upon its receipt, Barragan's counsel learned of the rock and dirt embankment at the accident site, and immediately recommended filing an application for leave to file a late claim against the County. Counsel also retained an accident expert, and obtained a collision history of the accident site.

On April 9, 2008, slightly less than one year after the accident, Barragan filed with the County both an application for leave to present a late claim and the late claim itself. On April 16, 2008, the County returned the claim itself with no action taken, on the basis that it was untimely. That same day, the County deemed the application for leave to file a late claim denied as a matter of law.

On July 17, 2008, Barragan filed, in superior court, a petition for relief from the TCA filing requirements.[4] Under Government Code section 946.6, relief may be granted when the petitioner establishes that one of several itemized circumstances applies.[5] Two of these circumstances are at issue in this case: (1) "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court

---

[3] Barragan thought that the airbags might not have deployed in the accident. It appears that she was mistaken on this point.

[4] Barragan titled the pleading a "Petition for Leave to File a Late Claim." The parties, and the court, treated the petition as a petition for relief from the TCA claims requirements.

[5] The petition for relief from the TCA must be filed within six months after the government agency denies the petition for leave to file a late claim. (Gov. Code, § 946.6.) It is undisputed that Barragan's petition for relief was timely.

relieves the petitioner from [the claim filing requirements]" (Gov. Code, § 946.6, subd. (c)(1)); and (2) "[t]he person who sustained the alleged injury, damage or loss was physically or mentally incapacitated during all of the [six-month period] for the presentation of the claim and by reason of that disability failed to present a claim during that time." (Gov. Code, §§ 946.6, subd. (c)(3), 911.2, subd. (a).) We refer to these grounds for relief as "excusable neglect" and "incapacity," respectively. The petitioner must also establish that the application for leave to file a late claim was filed with the governmental entity within "a reasonable time not to exceed" one year after the claim accrued. (Gov. Code, §§ 946.6, subd. (c), 911.4.)

Barragan initially sought relief solely on the theory of excusable neglect; she was subsequently permitted to amend her petition to pursue incapacity as well. The County opposed Barragan's petition on four bases: (1) as to all grounds for relief, the application for leave to file a late claim was not filed within a reasonable time; (2) as to excusable neglect, Barragan's neglect is not excusable as she made no effort to contact an attorney during the initial six-month claim period; (3) as to excusable neglect,[6] the County would be prejudiced by granting relief, as Barragan's vehicle has been destroyed; and (4) as to incapacity, Barragan was not so incapacitated during the entire six-month period that she could not retain counsel.

Prior to the hearing, the trial court issued a lengthy tentative decision. As the accident occurred on April 12, 2007, Barragan had until October 12, 2007, to file a timely claim, and until April 12, 2008, to file a petition for leave to file a late claim, although the petition for leave must also be filed within a "reasonable" time. Preliminarily, the court stated that, "[w]ithout a compelling explanation," Barragan's failure to file the petition for leave to file a late claim until April 10, 2008, constituted an "unreasonable" delay. The court next considered incapacity, and tentatively concluded that, although Barragan suffered substantial physical injuries, she had no cognitive impairment and was able to orally communicate. Barragan could make telephone calls with assistance, and leave her home with assistance. Considering that the reality of Barragan's life included people available to assist her, the court tentatively concluded that Barragan had the ability to contact an attorney to investigate a possible claim during the six-month period, and was therefore not fully incapacitated.[7] The court next considered excusable neglect and reached a similar tentative conclusion. The court reasoned that while Barragan did not know that she possessed a potential claim against the

---

[6] Prejudice is not at issue when the motion for relief is based on incapacity. (*County of Alameda v. Superior Court* (1987) 196 Cal.App.3d 619, 625, fn. 3 [242 Cal.Rptr. 215].)

[7] The court noted that Barragan contacted an attorney with assistance in February 2008, and indicated that Barragan "fails to explain what changed in February 2008 that permitted her to contact an attorney if she could not have done so earlier."

County during the six-month period, her failure to consult an attorney (who could have determined whether she had such a claim) during this period did not constitute excusable neglect. Additionally, the court tentatively found that the County was prejudiced by Barragan's failure to file a timely claim, because the car had been destroyed.

At the hearing on the motion, plaintiff's counsel argued that, given Barragan's catastrophic injuries and her attempts to get her life back together, it was reasonable for her not to seek counsel within six months. The court replied, "Now you're arguing excusable neglect which I would have found but for these cases that say you have got to go to a lawyer or it is not excusable." The court identified a case, *Munoz v. State of California* (1995) 33 Cal.App.4th 1767 [39 Cal.Rptr.2d 860] (*Munoz*), which "seems to [state] a bright-line rule that if you don't go to a lawyer on time, then you are not reasonably diligent. Period. End of story. And you know, in this particular case, there certainly are a number of facts that would justify her delay otherwise."

The court ultimately ruled that there was no excusable neglect because Barragan had not contacted counsel within six months. The court went on to state, "If that is not correct and the Court of Appeal should decide that there's no bright-line rule that failure to hire a lawyer itself prevents excusable neglect, then I would find excusable neglect here because I do think her injuries and basically an inability to do anything except try to recover would render her neglect excusable." The court stated that its tentative ruling "as modified here orally" was its final ruling. The court specifically indicated that one of the modifications to the tentative ruling was that the court "would find excusable neglect if I didn't feel foreclosed by *Munoz* from doing so."

The trial court denied the petition for relief from the TCA requirements. Barragan filed a timely notice of appeal.

### *ISSUES ON APPEAL*

We first consider whether a bright-line rule applies barring a finding of excusable neglect if the claimant did not attempt to contact an attorney within the six-month period. We conclude that such a bright-line rule does not apply, and that a party who fails to contact counsel during that period due to physical disability may be found to have established excusable neglect. As the trial court indicated that it would have found excusable neglect in the absence of such a bright-line rule, we consider that finding, and conclude that it does not constitute an abuse of discretion.

Second, we consider whether the trial court's ruling with respect to prejudice bars any relief for excusable neglect. We conclude that the finding

is not supported by any evidence, and therefore constitutes an abuse of discretion. As the County has failed to establish prejudice, and Barragan has established excusable neglect, we reverse the order denying Barragan's petition for relief from the TCA claim filing requirements.

## *DISCUSSION*

### 1. *Standard of Review*

An order denying a petition for relief from the TCA claim filing requirements is an appealable order. (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435, fn. 8 [197 Cal.Rptr. 601, 673 P.2d 271]; *Munoz, supra*, 33 Cal.App.4th at p. 1772, fn. 1.) "The determination of the trial court in granting or denying a petition for relief under Government Code section 946.6 will not be disturbed on appeal except for an abuse of discretion. Abuse of discretion is shown where uncontradicted evidence or affidavits of the plaintiff establish adequate cause for relief." (*Munoz, supra*, 33 Cal.App.4th at p. 1778.) "Government Code section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary. The remedial policy underlying the statute is that wherever possible cases should be heard on their merits. Thus, a *denial* of such relief by the trial court is examined more rigorously than where relief is granted and any doubts which may exist should be resolved in favor of the application." (*Ibid.*) Nonetheless, we "cannot arbitrarily substitute our judgment for that of the trial court." (*Bennett v. City of Los Angeles* (1970) 12 Cal.App.3d 116, 120 [90 Cal.Rptr. 479].)

■ "It is the well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their purview, and the modern trend of judicial decisions favors granting relief unless absolutely forbidden by statute." (*Munoz, supra*, 33 Cal.App.4th at p. 1778.) "[S]ubstantial compliance is all that is required. The old doctrine of strict and literal compliance, with its attendant harsh and unfair results, has disappeared from California law." (*Ibid.*)

While we review the trial court's ruling for abuse of discretion, that discretion must be exercised in conformity with the spirit of the law. The policy favoring trial on the merits cannot be applied indiscriminately to render statutory time limits ineffective. (*People ex rel. Dept. of Transportation v. Superior Court* (2003) 105 Cal.App.4th 39, 44 [129 Cal.Rptr.2d 60] (*DoT*).)

### 2. *Excusable Neglect*

■ The first basis for relief under the TCA is excusable neglect. "Excusable neglect has been defined as neglect that might have been the act or

omission of a reasonably prudent person under the same or similar circumstances." (*Munoz, supra,* 33 Cal.App.4th at p. 1782.) It "is not shown by the mere failure to discover a fact until it is too late; the party seeking relief must establish that *in the exercise of reasonable diligence,* he failed to discover it." (*DoT, supra,* 105 Cal.App.4th at p. 44.)

Claimants who have missed the claim filing deadline often argue that, as lay individuals, they simply *did not know* that they had a potential cause of action against a public entity. However, lack of knowledge alone is not considered a sufficient basis for relief, when the claimant did not make an effort to obtain counsel. "It is precisely because theories of third party liability are subtle, complex, and often not readily apparent to a layman that due diligence requires at least consultation with legal counsel." (*DoT, supra,* 105 Cal.App.4th at p. 46; see *Harrison v. County of Del Norte* (1985) 168 Cal.App.3d 1, 7–8 [213 Cal.Rptr. 658]; cf. *Garcia v. Los Angeles Unified School Dist.* (1985) 173 Cal.App.3d 701, 708 [219 Cal.Rptr. 544] [similar analysis with respect to lack of knowledge of claim filing requirements].)

Because of this, the *Munoz* court stated that there is a "rule[]" that "a [claimant] may not successfully argue excusable neglect when he or she fails to take any action in pursuit of the claim within the six-month period. The claimant must, at a minimum, make a diligent effort to obtain legal counsel within six months after the accrual of the cause of action."[8] (*Munoz, supra,* 33 Cal.App.4th at pp. 1778–1779.)

▮ The rule however, is not as absolute as *Munoz* appears to suggest. Indeed, one of the cases on which *Munoz* relied, *Bertorelli v. City of Tulare* (1986) 180 Cal.App.3d 432 [225 Cal.Rptr. 582], stated, "a petitioner may not successfully argue excusable neglect when he fails to take *any* action in pursuit of the claim within the [six-month[9]] period. '[T]he claimant must at a minimum make a diligent effort to obtain legal counsel within [six months] after the accrual of the cause of action. . . . The reasonable and prudent course of conduct under the circumstances of this case was to seek legal counsel.' (*Ebersol* v. *Cowan, supra,* 35 Cal.3d at p. 439.) [¶] Yet, these specific rules are not absolutes. *Ebersol* does not hold that it will always be inexcusable neglect when the petitioner fails to obtain the advice of counsel within the [six-month] period. The opinion distinguishes between the lay person who fails to do anything during the [six months] after the claim accrues and the person who acts diligently but unsuccessfully to retain legal counsel. The court reaches its holding only after applying the principal rule:

---

[8] *Munoz* was concerned with a wholly different issue; it simply stated this "rule" as an example of court-imposed limitations on obtaining relief from the TCA requirements.

[9] Under Government Code former section 911.2, the six-month period for filing a claim was 100 days.

'Excusable neglect is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances.' (*Ebersol* v. *Cowan, supra,* 35 Cal.3d at p. 435.) Thus, even the failure to obtain legal advice will be excused when a different course of action is reasonably prudent. Circumstances which would 'trap the unwary' may suffice." (*Bertorelli v. City of Tulare, supra,* 180 Cal.App.3d at p. 439.)

■ The issue in this case is whether a claimant's physical disability may be sufficient to render neglect in obtaining counsel excusable. To properly consider this, we must distinguish physical disability for the purposes of excusable neglect from incapacity. To establish incapacity as a justification for relief from the TCA requirements, a claimant must establish that he or she "was physically or mentally incapacitated during all of the [six-month period] for the presentation of the claim and by reason of that disability failed to present a claim during that time." (Gov. Code, § 946.6, subd. (c)(3).) The inquiry focuses only on the state of the *claimant*; it is not relevant if others could have voluntarily filed a claim on the claimant's behalf. (*Draper v. City of Los Angeles* (1990) 52 Cal.3d 502, 508–509 [276 Cal.Rptr. 864, 802 P.2d 367]; *O'Brien v. City of Santa Monica* (1963) 220 Cal.App.2d 67, 76 [33 Cal.Rptr. 770].) However, if the claimant's condition was such that the *claimant could have authorized* another to file the claim on his or her behalf, the claimant was not incapacitated from filing the claim. (*Draper v. City of Los Angeles, supra,* 52 Cal.3d at p. 509 [cases "analyze the extent of the injured person's disability and determine whether it was so great as to preclude filing a timely claim or authorizing someone to do so"].) In other words, the type of disability which justifies relief from the TCA on the grounds of incapacity is an all-encompassing disability which prevents the claimant from even authorizing another to file a claim for the claimant. In the instant case, the trial court concluded that incapacity was not established, as Barragan was mentally unharmed and capable of communicating her wishes to others, who could have acted for her during the six-month period. This conclusion is supported by the evidence.

■ However, the fact remains that Barragan suffered devastating injuries, the recovery from which dominated her waking hours during the six-month period. The issue in this case is whether these injuries, while not sufficient to establish incapacity, must be wholly disregarded in determining whether Barragan's neglect was excusable. They need not. Excusable neglect *can* be the result of disability. (*County of Alameda v. Superior Court, supra,* 196 Cal.App.3d at p. 625.) When a claimant is disabled, even if not so limited as to satisfy the incapacity basis for relief, that disability could justify a trial court in concluding that the claimant's failure to contact an attorney was itself excusable neglect. (*Martin v. City of Madera* (1968) 265 Cal.App.2d 76, 80 [70 Cal.Rptr. 908] [stating that, if the trial court had so found, it would unlikely have been reversed on appeal].)

Indeed, immediately after the court in *DoT* stated that it is "uniformly clear" that a claimant must attempt to obtain counsel during the initial six-month period, it considered the claimant's argument that he did not seek counsel due to postaccident depression and trauma. The court rejected the argument on procedural grounds and went on to state that, even if the argument were cognizable on appeal, the claimant's evidence was "insufficient to demonstrate excusable neglect, because no evidence was offered that these conditions substantially interfered with his ability to function in daily life, take care of his personal and business affairs, or seek out legal counsel." (*DoT, supra,* 105 Cal.App.4th at p. 46.) The court did *not* state that the claimant's disability was irrelevant and that his failure to seek counsel ended the inquiry; instead, the court stated that the claimant's evidence was simply insufficient to establish excusable neglect in failing to seek counsel. (*Id.* at pp. 46–47 & fn. 2.)

■ Thus, we conclude that there is no absolute rule barring excusable neglect when the claimant has failed to obtain counsel during the six-month period. If a claimant can establish that physical and/or mental disability so limited the claimant's ability to function and seek out counsel such that the failure to seek counsel could itself be considered the act of a reasonably prudent person under the same or similar circumstances, excusable neglect is established. We recognize, however, that every claimant is likely to be suffering from some degree of emotional upset, and it takes an exceptional showing for a claimant to establish that his or her disability reasonably prevented the taking of necessary steps. (*Bennett v. City of Los Angeles, supra,* 12 Cal.App.3d at p. 121 & fn. 2; see *Perez v. City of Escondido* (S.D.Cal. 2001) 165 F.Supp.2d 1111, 1112–1117 [finding that a mother who had failed to timely seek counsel acted diligently under the circumstances, when, after her son was shot by police in front of her daughter, she spent the months immediately following the shooting caring for her son's life and her daughter's emotional health].)

■ We therefore conclude that a finding of excusable neglect was not barred, as a matter of law, by Barragan's failure to seek counsel within six months. Anticipating this result, the trial court indicated that, if there is not such an absolute bar, it would find that Barragan established excusable neglect. Such a finding is not an abuse of discretion. Barragan spent the first three months in the hospital, and the remainder of the six-month period confined to her bed at home. Depressed, in pain, and under the influence of medication, Barragan's attention was directed toward relearning the basic tasks of everyday life, such as eating, holding a toothbrush, and controlling her elimination of waste. During that six-month period, she was unable to even sit up without assistance, and did not so much as leave her bedroom to watch television. The trial court concluded that her failure to consult counsel—when she did not believe that she had a cause of action—was the

neglect of a reasonably prudent person under the circumstances. This is not an abuse of discretion. We therefore conclude that excusable neglect has been established.

### 3. *Prejudice*

The County argues, however, that even if we conclude that excusable neglect has been established, we must uphold the trial court's order denying Barragan's petition for relief due to the trial court's finding that the County would be prejudiced by such relief.[10] We disagree.

Government Code section 946.6, subdivision (c)(1) requires the court to grant relief when "[t]he failure to present the claim was through . . . excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from [the claim filing requirements]." As excusable neglect was established, the County had the burden to establish that it would be prejudiced in the defense of the claim if relief from the claim filing requirements is granted. The only evidence of prejudice submitted by the County was the fact that the car had been destroyed on August 16, 2007.

The County introduced no evidence that the destruction of the car prejudiced it in its defense. There was, for example, no declaration from an accident reconstruction expert indicating that the CHP report of the accident and the photographs of the damaged vehicle would be insufficient for any particular analysis. Indeed, the County argued only that the destruction of the vehicle deprived the County "of the opportunity to check/verify the condition of the vehicle, the use of seat belts (defense/damages); whether the air bags properly deployed, etc." The CHP report indicates both the use of the lap/shoulder harness and the deployment of the air bag; the photographs illustrate the condition of the vehicle. Thus, not only has the County not introduced *evidence* that the destruction of the vehicle would prejudice it in its defense, it has argued no plausible *theory* for any such prejudice.

More importantly, however, the County cannot establish that any prejudice it may have suffered by the destruction of the car is prejudice that would arise *from the court's grant of relief from the TCA filing requirements*. Had

---

[10] The County also argues that we must uphold the trial court's denial due to the trial court's "finding" that Barragan's petition to file a late claim was not filed within a reasonable time. This is a reference to the trial court's tentative conclusion that "[w]ithout a compelling explanation, the delay is unreasonable." Clearly, the trial court's finding of a lack of a "compelling explanation" was informed by the trial court's finding of no excusable neglect. As we have now upheld the trial court's alternative finding of excusable neglect, a compelling explanation exists.

Barragan filed a claim between August 18, 2007, and October 12, 2007, the County would have suffered the exact same prejudice in its defense of the action (as the car had been destroyed), but Barragan's claim would have been timely. Thus, any such prejudice would not be the result of granting relief from the TCA filing requirements.[11] To the extent the trial court's denial of relief rested on a finding of prejudice, the court abused its discretion.

## *DISPOSITION*

The order denying relief from the TCA filing requirements is reversed and the matter is remanded with directions to enter a new and different order granting relief. Barragan shall recover her costs on appeal.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied June 11, 2010, and respondent's petition for review by the Supreme Court was denied August 11, 2010, S184178. George, C. J., did not participate therein.

---

[11] The statute is not concerned with any prejudice that arose during the claims period, but rather, with whether the government entity would be prejudiced "if the court relieves the petitioner from" the TCA requirements. (Gov. Code, § 946.6, subd. (c)(1).) As the same prejudice would have arisen had Barragan filed a *timely* claim during the last two months of the claims period, it cannot possibly have arisen from the grant of relief from the claim filing requirements.