Filed 9/24/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ASHLEIGH CAVEY,<br><br>      Plaintiff and Appellant,<br><br>            v.<br><br>POLICARPIO TACAS TUALLA, JR., et al.,<br><br>      Defendants and Respondents. | F080153<br><br>(Super. Ct. No. 18CECG01104)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kimberly A. Gaab, Judge.

Berglund & Johnson Law Group and Stephen M. Johnson for Plaintiff and Appellant.

Weakly & Arendt, James D. Weakley and Ashley N. Reyes for Defendants and Respondents.

-ooOoo-

Plaintiff Ashleigh Cavey filed this personal injury action for injuries sustained in a traffic accident involving a vehicle driven by an employee of defendant Kings Canyon Unified School District (District).  District filed a demurrer, contending the lawsuit was time-barred by the six-month statute of limitations proscribed in Government Code

section 945.6, subdivision (a)(1).[1]  The trial court sustained the demurrer without leave to amend and entered a judgment of dismissal.  Plaintiff appealed.

District's theory of untimeliness is based on its July 19, 2017 notice rejecting a claim presented without plaintiff's authorization by a chiropractic firm that was treating her injuries.  District contends the rejection notice started the statute of limitations and, as a result, the six-month period expired on January 19, 2018—well before plaintiff filed her complaint in April 2018.  Plaintiff alleges the claim submitted by the chiropractic firm was not authorized by her and, based on that allegation, argues the claim was not presented "by a person acting on … her behalf" for purposes of section 910.  In plaintiff's view, when someone who is not acting on the claimant's behalf presents a claim, that claim has no effect and, moreover, a notice of rejection of that claim does not start the six-month limitations period.  Under plaintiff's approach, the limitations period did not begin to run until the authorized claim submitted by her lawyers was deemed rejected in November 2017.  Using a November 2017 start date, plaintiff contends her April 2018 complaint was timely under the six-month statute of limitations.  (§ 945.6, subd. (a)(1).) Alternatively, plaintiff contends District's notice of rejection was mailed to the wrong address and, as a result, the two-year statute of limitations in section 945.6, subdivision (a)(2) applies.

As described below, we agree with both contentions and conclude the demurrer asserting that the lawsuit was untimely should have been overruled.  We therefore reverse the judgment of dismissal.[2]

---

[1]    This statute of limitations is part of the Government Claims Act (Gov. Code, § 810 et seq.).  Unlabeled statutory references are to the Government Code.

[2]    We publish this opinion because it answers questions of statutory interpretation not explicitly resolved in other decisions, including what it means for a claim to be presented "by a person acting on [the claimant's] behalf" (§ 910), the legal effect of a claim that was not presented on the claimant's behalf, and whether mailing a notice of rejection to the claimant's attorney complies with sections 913, subdivision (a) and 915.4,

2.

**FACTS**

On May 8, 2017, plaintiff was a passenger in a vehicle hit by a truck driven by Policarpio Tacas Tualla, Jr. and registered to District (collectively, defendants). The collision occurred near the corner of Buttonwillow and Parlier Avenues in Fresno County. Plaintiff alleges Tualla fell asleep while driving, which caused the collision and her injuries.[3]

Plaintiff notes that Graham's complaint alleged (1) the vehicle driven by Tualla was a 2007 GMC 2500 truck owned by District; (2) the California Highway Patrol's traffic collision report indicated Tualla has a medical condition of continued epilepsy and takes medication for it; (3) District was aware of Tualla's medical condition and the likelihood of injury to others it presents; (4) Tualla has been involved in at least three motor vehicle accidents while working for District; and (5) in July 2016, Tualla was charged with hit and run in Fresno County Superior Court criminal case No. M16924192.

*The First Claim*

After the traffic accident, plaintiff received treatment for some of her injuries from Lark Chiropractic, which had her sign several forms. Those forms included a one-page document labeled "CLAIM FOR DAMAGES" with the date "06/01/17" written to the right of plaintiff's signature. The claim stated plaintiff's injuries occurred on Monday, May 8, 2017, at 12:30 p.m.; identified the accident location; stated plaintiff was a passenger in a car hit by a work truck driven by Tualla; asserted the collision occurred because Tualla fell asleep; identified the California Highway Patrol report number for the accident; and listed plaintiff's injuries as "concussion, bruised shoulder, neck and muscle

---

subdivision (a) when the attorney and the attorney's address were not listed on the claim form.

[3]    Two other lawsuits arose from the collision. On January 3, 2018, Steven Graham filed a complaint against defendants in Fresno County Superior Court (case No. 18CECG00037). On January 8, 2018, Daniel Brenes-Cerpa and Thelma Marisa Ayon-Mariscal filed a complaint against defendants (case No. 18CECG00064).

pain." The claim also stated the names of witnesses were unknown and left blank the line for the total amount claimed.

Plaintiff's June 2018 declaration explained her signature on the claim form by stating: "I signed several documents given to me by [Lark Chiropractic], some of which were similar to lien forms. I understood that I had to sign those forms in order to receive medical treatment. I did not know I signed a government claim form. I did not know or understand at the time that it was necessary for a claim to be [presented to] a government entity in connection with my accident."

On June 5, 2017, Lark Chiropractic sent the claim signed by plaintiff to District by facsimile transmission (fax).[4] The only address set forth in that claim was plaintiff's post office box in Frazier Park. Plaintiff's declaration states she "did not know that Lark Chiropractic had [presented] a government claim form on [her] behalf."

On June 13, 2017, plaintiff retained the law firm of Berglund & Johnson to pursue her personal injury claim against defendants. Plaintiff's declaration states she did not tell Berglund & Johnson "that I had signed a government claim form or that one had apparently been [presented] for me by Lark Chiropractic as I was unaware of it being done." About a week after being retained, Berglund & Johnson provided a copy of plaintiff's designation of them as her attorneys to Melissa Reynolds, an adjuster at Schools Insurance Authority. The designation informed Reynolds that the firm was representing plaintiff.

---

[4]     During oral argument, defense counsel acknowledged that this manner of presentation did not comply with subdivision (b) of section 915 and stated that District had waived any defects involving the manner of delivery. (See § 911 [waiver of defenses based on a defect].) District also waived the claim's failure to comply with the requirements for disclosing the amount claimed, which requirements are set forth in subdivision (f) of section 910.

*Notice of Rejection of Claim*

On July 19, 2017, Reynolds signed a notice of rejection of claim on behalf of Schools Insurance Authority and mailed it to Berglund & Johnson at the firm's address in Woodland Hills. The rejection notice was not sent to the post office box listed in the claim presented by Lark Chiropractic. The notice of rejection included a line immediately below the Berglund & Johnson's address stating: "RE: Ashleigh Cavey." The body of the notice stated that "NOTICE IS HEREBY GIVEN that the claim which your client presented to … District dated <u>June 1, 2017</u> and received on <u>June 5, 2017</u> was rejected by operation of law on <u>July 19, 2017</u>" and included the statutorily required warning that the claimant had only six months from the date the notice to file a lawsuit. (See §§ 913, subd. (b) [form of warning], 945.6, subd. (a) [limitation periods].)

The rejection notice did not attach a copy of the claim presented by Lark Chiropractic. As a result, the rejection notice did not provide Berglund & Johnson with details about the contents of the rejected claim, such as the factual basis for the claim, the damages sought, or who submitted it. The law firm's initial reaction to the notice of rejection is described in Johnson's declaration: "At the time, [Plaintiff's] counsel was (still) unaware of the claim submitted by Lark Chiropractic on the Plaintiff's behalf, and assumed that the rejection letter related to claims of *other* claimants involved in the same accident."

*The Second Claim*

On September 18, 2017, Berglund & Johnson completed a "CLAIM FOR DAMAGES" form. The claim stated the time, date and location of the collision; asserted Tualla caused the collision when he fell asleep while driving; identified Graham, Cerpa and Ayon as witnesses; listed plaintiff's injuries as "head, neck, left shoulder, left chest [and] mouth"; set forth the California Highway Patrol report number for the accident; and stated the total amount claimed was $250,000. Thus, the law firm's claim provided District with more information than the claim previously presented by Lark Chiropractic

5.

because it listed witnesses, stated the total amount claimed, and included plaintiff's left chest and mouth among her injuries. Daniel Johnson, in his capacity as plaintiff's attorney, signed the claim and entered his firm's address in Woodland Hills.

On September 20, 2017, Berglund & Johnson mailed one copy of the claim to District and another copy to Jason Flores, District's director of transportation. The cover letter for the claim sent to Flores stated: "Our office represents Ashleigh Cavey for her injuries received in an accident on May 8, 2017 involving a vehicle registered to Kings Canyon Unified School District. [¶] Enclosed is Claim for Damages on behalf of Ashleigh Cavey. This Claim was also sent to Kings Canyon Unified School District at 1801 10th Street, Reedley, CA 93654. Please advise if there is another location to file this Claim." The letters were sent by certified mail. The return receipt for the letter sent to the District shows it was delivered on September 22, 2017. The return receipt for the letter sent to Flores shows it was delivered on October 2, 2017 and stamped "RECEIVED" on October 4, 2017. Thus, both claims mailed by Berglund & Johnson were received by District less than 150 days after the accident—well within the six-month period for timely presenting a claim. (§ 911.2, subd. (a).)

District did not respond to the claim presented by Berglund & Johnson. In particular, District did not notify plaintiff or her lawyers that the claim presented by Berglund & Johnson was rejected or defective. Accordingly, using the September 22, 2017, delivery date of the letter sent to District, the claim was deemed rejected on November 6, 2017.[5] (§ 912.4, subd. (c) [if public entity fails or refuses to act on a claim within 45 days after it was presented, "the claim shall be deemed to have been rejected"].)

---

[5]   For purposes of part II. of this opinion, the deemed rejection date of November 6, 2017, is assumed to be the date the six-month limitation period in section 945.6, subdivision (a)(1) started to run despite the fact that District did not give written notice of rejection in accordance with sections 913 and 915.4.

## PROCEEDINGS

On April 2, 2018, Berglund & Johnson filed a complaint for damages on behalf of plaintiff. The complaint named Tualla and District as defendants and alleged a single cause of action for negligent operation of a motor vehicle.

The complaint was filed less than five months after the November 2017 deemed rejection date of the claim presented by Berglund & Johnson and approximately 11 months after the date of the traffic accident. Thus, in the absence of the claim presented by Lark Chiropractic, it is undisputed that (1) the claim presented by Berglund & Johnson was timely presented within six months of the accrual of the negligence claim on the date of the collision and (2) the lawsuit was filed within six months of the deemed rejection of the claim.

On April 18, 2018, Berglund & Johnson e-mailed a courtesy copy of the summons and complaint to Reynolds, the adjuster at Schools Insurance Authority, and asked her to confirm receipt. Six minutes later, Reynolds replied in an e-mail stating: "The Notice of Rejection of Claim was mailed to your office on July 19, 2017; the statute ran on January 19, 2018. It doesn't appear that this suit was filed prior to January 19, 2018."

In July 2018, plaintiff filed a petition for order permitting a late claim against District (§ 946.6) or, in the alternative, for an order deeming the claim presented by Berglund & Johnson to be the operative claim for purposes of plaintiff's lawsuit. District filed an opposition and plaintiff filed a reply. The trial court held a hearing and, a few days later, issued a written order denying plaintiff's petition.

In October 2018, defendants filed a demurrer to the complaint on the ground that plaintiff's cause of action was barred by the six-month statute of limitations in section 945.6, subdivision (a)(1). Defendants supported the demurrer with a request for judicial notice of plaintiff's July 2018 petition and related exhibits. In March 2019, the trial court granted the request for judicial notice and sustained the demurrer with leave to amend.

In April 2019, plaintiff filed a first amended complaint, which is the operative pleading in this appeal. The first amended complaint included allegations about the claim presented by Lark Chiropractic without authorization from plaintiff, District's rejection of the unauthorized claim, the claim subsequently presented by Berglund & Johnson with plaintiff's authorization, and District's rejection of the authorized claim by the passage of time without a response. Paragraph eight of that pleading alleged Lark Chiropractic "filed a Claim for Damages on Plaintiff's behalf, without her understanding, knowledge or permission inasmuch as Plaintiff thought she was signing medical lien forms." Paragraph 16 alleged Berglund & Johnson "are, and have been, the only persons authorized or given permission by the Plaintiff to file a government claim on her behalf."[6]

Defendants filed another demurrer, again contending the lawsuit was time-barred by the six-month statute of limitations. After an opposition and reply were filed, the trial court issued a tentative ruling to sustain the demurrer without leave to amend.

In July 2019, the trial court heard argument on the demurrer, filed a minute order adopting its tentative ruling, and entered a judgment of dismissal. Plaintiff appealed.

## DISCUSSION

I. BASIC LEGAL PRINCIPLES

A. Demurrers and Standard of Review

Under Code of Civil Procedure section 430.30, subdivision (a), when "any ground for objection to a complaint … appears on the face thereof, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by a demurrer to the pleading." The statute of limitations is a "ground for objection

---

[6] We construe the first amended complaint's use of the words "filed" and "file" to mean "presented" and "present" because, technically, claims submitted under the Government Claims Act are not filed. Rather, they are "presented to the local public entity." (§ 915 [methods for presenting a claim].)

8.

to a complaint" for purposes of this provision and, therefore, may be raised in a demurrer. (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 493.)

In addition, Code of Civil Procedure section 430.10, subdivision (e) authorizes a demurrer on the ground that the complaint "does not state facts sufficient to constitute a cause of action." This type of demurrer is referred to as a *general* demurrer. (E.g., *SLPR, L.L.C. v. San Diego Unified Port District* (2020) 49 Cal.App.5th 284, 316.) "A statute of limitations defense may be asserted by general demurrer." (*Ibid.*)

Generally, an order sustaining a demurrer on statute of limitations grounds is subject to de novo review on appeal. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) The untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed before an appellate court will affirm an order sustaining the demurrer. (*Committee for Green Foothills*, *supra*, at p. 42.) Under this standard, allegations in the complaint or judicially noticed materials showing the claim *might* be barred are not enough. (*Marshall v. Gibson*, *Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403.)

The allegations in a complaint must be given a liberal, but reasonable, construction. (Code Civ. Proc., § 452; see *Advanced Modular Sputtering, Inc. v. Superior Court* (2005) 132 Cal.App.4th 826, 835 ["pleadings are to be liberally construed in favor of the pleader"].) When construing a complaint, courts must read it as a whole and its parts in their context. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) The demurrer is treated as admitting all material facts properly pleaded, but does not admit the truth of contentions, deductions or conclusions of law. (*Ibid.*; *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 ["the facts alleged in the pleading are deemed to be true" for purposes of a demurrer].)

9.

B.    Government Claims Act

The Government Claims Act was enacted in 1963 to provide a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts.  (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803 (*Quigley*).)  The Legislature relied on a series of recommendations from the California Law Revision Commission when it adopted the Government Claims Act.  (*Ibid.*; see, e.g., Recommendation Relating to Sovereign Immunity, No. 1—Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) pp. 801–886 (1963 Recommendation No. 1).)  As a result of this reliance, the Law Revision Commission's reports are entitled to substantial weight in construing the Government Claims Act.  (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003, fn. 6 (*Farmers*).)

Section 815 eliminated all common law tort liability for public entities by providing such entities are not liable for an injury "[e]xcept as otherwise provided by statute."  (See *Quigley*, *supra*, 7 Cal.5th at p. 803; *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)  The statutory basis for the liability asserted in this litigation is section 815.2, which provides:  "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.  [¶]  (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  In turn, section 820 delineates the liability of public employees.  Together, these statutory provisions establish the general rule that an employee of a public entity is liable for his torts to the same extent as a private person and the public entity is vicariously liable for any injury its employee causes to the same extent as a private employer.  (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868.)

10.

The foregoing rule of liability reflects the Law Revision Commission's determination it would be harsh and unjust to deny compensation to all persons injured by the wrongful or negligent acts of public employees. The Law Revision Commission stated:

> "Government operates for the benefit of all; hence, it is reasonable to expect that all should bear some of the burden of the injuries that are wrongfully inflicted by the government. The basic problem is to determine how far it is desirable to permit the loss distributing function of tort law to apply to public entities without unduly frustrating or interfering with the desirable purposes for which such entities exist." (1963 Recommendation No. 1, *supra*, p. 810.)

To address this basic problem, the Law Revision Commission considered "how the interest of the public in effective governmental administration should be balanced against the need for providing compensation to those injured by the activities of government" in various areas of potential liability, including the operation of motor vehicles. (1963 Recommendation No.1, *supra*, p. 811.) To summarize, the balance struck by the Law Revision Commission and by the Legislature in enacting section 815.2, subdivision (a) holds public entities vicariously liable for injuries caused by their employees' negligent operation of a motor vehicle.

### 1. Claim Presentation Requirements

The liability imposed on local public entities and their employees by the Government Claims Act is subject to the condition that "all claims for money or damages against local public entities" be "presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910)." (§ 905.) Chapter 2 sets forth requirements for the presentation and consideration of claims, including the time for presenting the written claim (§ 911.2) and the contents of the claim (§§ 910, 910.2).

When a personal injury is involved, the written claim for damages must be presented to the public entity "not later than six months after the accrual of the cause of

action." (§§ 911.2, subd. (a), 945.4.) The "claim shall be presented by the claimant or by a person acting on his or her behalf." (§ 910.) The claim's contents must include all of the following:

> "(a) The name and post office address of the claimant. [¶] (b) The post office address to which the person presenting the claim desires notices to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the … injury, damage or loss incurred so far as it may be known at the time of presentation of the claim. [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case." (§ 910.)

The presentation of a written claim to the public entity serves at least three purposes. First, it provides the public entity with sufficient information to enable it to perform an adequate investigation of the claim and, if appropriate, settle it without the expense of litigation. (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446; see Recommendation Relating to Sovereign Immunity, No. 2—Claims, Actions and Judgments Against Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 1008 [objectives of claim presentation procedure] (1963 Recommendation No. 2).) Second, the written claim informs the public entity of potential liability so it can better prepare for the upcoming fiscal year. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776.) Third, in certain situations, the claim provides the public entity an opportunity to address a dangerous condition or practice and avoid further injuries. (*San Diego Unified Port Dist. v. Superior Court* (1988) 197 Cal.App.3d 843, 847.) Providing an opportunity to settle a claim before a lawsuit is filed and correct dangers before other injuries are caused

promotes the basic policy of discouraging litigation. (See 1963 Recommendation No. 2, *supra*, at p. 1008.)

### 2. *Public Entity's Consideration of Claims*

The Government Claims Act also defines the local public entity's responsibilities once it receives a written claim for money or damages. The governing board of the local public entity may act on a claim by rejecting it, allowing it, or compromising it. (§ 912.6, subd. (a).) Section 912.4 specifies the time for action by the board. Generally, the board must act "within 45 days after the claim has been presented." (§ 912.4, subd. (a).) If the board fails or refuses to act within the specified time, the claim is deemed to have been rejected. (§ 912.4, subd. (c).)

Regardless of whether the public entity acts or chooses not to act on a claim, the Government Claims Act requires written notice to the claimant or the claimant's representative. Section 913, subdivision (a) states that "[w]ritten notice of the action taken … or the inaction that is deemed rejection under Section 912.4 shall be given in the manner prescribed by Section 915.4." Section 915.4, subdivision (a) states in relevant part that notices provided for in section 913 "shall be given by any of the following methods: [¶] (1) Personally delivering the notice to the person presenting the claim …. [¶] (2) Mailing the notice to the address, if any, stated in the claim … as the address to which the person presenting the claim … desires notices to be sent or, if no such address is stated in the claim …, by mailing the notice to the address, if any, of the claimant as stated in the claim …." A notice that a claim was rejected must include a warning about the six-month statute of limitations applicable to a court action on the claim. (§ 913, subd. (b); see § 945.6.)

Section 910.8 addresses how a public entity may handle a defective claim. If the public entity does not warn the claimant about a defect or omission, the public entity is

13.

deemed to have waived or forfeited any defense as to the insufficiency of the claim. (§ 911.)

### 3. Timeliness of a Lawsuit

Questions about the timeliness of a lawsuit against a public entity for money or damages can arise because the suit was filed too early or too late. A lawsuit is too early if it is filed before a written claim has been presented to and rejected by the public entity. (§ 945.4.) A lawsuit is too late if it is filed after expiration of the applicable statute of limitations set forth in the Government Claims Act, not the statute of limitations applicable to private defendants. (*County of Los Angeles v. Superior Court* (2005) 127 Cal.App.4th 1263, 1265 (*County of Los Angeles*).)

Plaintiff's arguments of reversible error are based on two different limitations periods. First, section 945.6, subdivision (a)(1) provides that, with certain exceptions, a lawsuit against a public entity must be commenced not later than six months after the public entity's written notice of rejection of the claim is delivered to the claimant personally or deposited in the mail. (See § 913, subd. (b) [rejection notice's warning about six-month limitations period].) Second, an exception to the six-month statute of limitations applies when "written notice is not given in accordance with Section 913." (§ 945.6, subd. (a)(2).) When such notice is not given, the claimant is required to commence the lawsuit "within two years from the accrual of the cause of action." (§ 945.6, subd. (a)(2).) This alternate, longer statute of limitations incentivizes public entities that reject a claim—whether explicitly or by inaction—to provide written notice to claimants in accordance with sections 913 and 915.4.

## II. THE CLAIM PRESENTED BY LARK CHIROPRACTIC

The parties dispute the consequences that flow from Lark Chiropractic's presentation of a claim and District's subsequent rejection of that claim. This dispute

14.

raises several issues, including questions of statutory interpretation not explicitly resolved in a published opinion.

    A.    <u>Overview</u>

        *1.    Statutory Text*

Our analysis begins with the statutory text addressing the presentation of a claim to a public entity. Section 910.2 states that the written "claim *shall* be signed by the claimant or *by some person on his behalf*." (Italics added.) Section 910 provides that the "claim *shall* be presented by the claimant or *by a person acting on his or her behalf*." (Italics added.)

Here, it is undisputed that the claim presented by Lark Chiropractic was signed by plaintiff. Consequently, that claim satisfied the signature requirement in section 910.2. As a result, the critical question is whether the claim presented by Lark Chiropractic satisfied the requirement in section 910 that it "be presented by … a person acting on [the claimant's] behalf."

The Government Claims Act does not define what it means for a third person to act on the claimant's behalf. Also, it does not specify the legal effect of a claim that is presented by a third party who is not acting on the claimant's behalf. Accordingly, we turn to other sources for assistance in interpreting section 910.

        *2.    Other Sources*

Those other sources include the Law Revision Commission's reports because they are entitled to substantial weight in construing the Government Claims Act. (*Farmers*, *supra*, 11 Cal.4th at p. 1003, fn. 6.) We, like the parties, located no discussion in those reports of section 910's language referring to a claim presented "by a person acting on [the claimant's] behalf" or the similar language in section 910.2.

Another source is "the leading treatise on the Government Claims Act." (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 655.) The treatise

acknowledges that sections 910 and 910.2 allow a claim to be prepared, signed, and presented by a third person acting on the claimant's behalf, and then remarks:

> "Because [sections] 910 and 910.2 do not expressly limit third party signatories to those the claimant preauthorized to sign the claim, this can lead to attorneys and other third parties signing claims on behalf of the claimant *without the claimant's permission*." (1 Van Alstyne et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2020) § 6.7, p. 6-7, italics added.)

The treatise does not specifically address what it means for a claim to be presented by a third party "acting on [the claimant's] behalf," which reflects the absence of a statutory definition and the dearth of case law addressing that specific issue of statutory interpretation. The treatise discusses claims presented without the claimant's preauthorization by stating:

> "If a claimant later disavows the claim, the unauthorized claim may not bind the claimant. See *Draper v City of Los Angeles* (1990) 52 C[al.]3d 502, 508 (plaintiff who was comatose and brain-damaged during claim-filing period not bound by claim that attorney filed with wrong agency). If a claimant does not repudiate an unauthorized claim, or seek leave to present a late claim, the claimant is bound by the claim. See *County of Los Angeles v. Superior Court,* [*supra,*] 127 C[al.App.]4th 1263, 1271 (if claimant does not repudiate unauthorized claim filed on her behalf, or seek leave to present her own late claim, she is bound by claim and must file complaint within 6 months of its denial)." (1 Van Alstyne et al., Cal. Government Tort Liability Practice, *supra*, § 6.7, p. 6-7.)

Next, we discuss in detail the cases cited in the treatise.

> 3. *Draper*

In *Draper v City of Los Angeles, supra,* 52 Cal.3d 502 (*Draper*), our Supreme Court considered a trial court's denial of a plaintiff's application for relief from the Government Claims Act's claim presentation requirements. Specifically, the court addressed "whether plaintiff, physically unable to [present] a claim against a governmental entity within 100 days of an accident (Gov. Code, former § 911.2), may be denied relief from the Government Code's claim[ presentation] requirements on the

16.

ground that an attorney, purporting to act on her behalf, [presented] a timely claim against a governmental entity different from the entity plaintiff now seeks to hold liable." (*Draper*, *supra*, at p. 504, fn. omitted.)[7] The court concluded the denial of relief was reversible error based on its construction of section 946.6, subdivision (c)(3). Section 946.6 provides that when a claimant's application to a public entity for leave to present a late claim is denied, the claimant may petition the court for relief from the claim presentation requirement. (*Draper*, *supra*, at p. 505.) Such relief is subject to various conditions and the court addressed the "condition for relief that the 'person who sustained the alleged injury, damages or loss was physically incapacitated ... [during the claim-filing period] and by reason of such disability failed to present a claim during that time.' " (*Ibid*.) Based on this statutory provision, the issues before the court were "whether plaintiff established that she was disabled during the 100–day claim [presentation] period and, if so, whether her disability explained her failure to [present] a timely claim." (*Id.* at p. 506.) The court answered these issues by holding that, "in light of the information the court had before it at the June 6 and July 7 hearings, plaintiff satisfied the requirements of subdivision (c)(3) that she demonstrate both her incapacity and the fact that her disability was the cause of her failure to [present] a timely claim." (*Id*. at pp. 506–507.)

In *Draper*, the defendant city contended the plaintiff failed to show her disability caused her failure to present a timely claim—the second element required by section 946.6, subdivision (c)(3). (*Draper*, *supra*, 52 Cal.3d at p. 508.) The city argued that the fact an attorney submitted a claim on the plaintiff's behalf during the 100-day period adequately supported the trial court's finding that her incapacity did not cause her omission. (*Ibid*.) This argument had been accepted by the trial court, which "ruled that

[7] The 100-day presentation period in former section 911.2 was extended to six months by the Legislature in 1987. (Stats. 1987, ch. 1201, § 18.)

17.

[the attorney] was acting as plaintiff's attorney when he [presented] the claim [to the wrong entity,] and that because she had not repudiated his actions she was bound by them." (*Ibid*.)

The city's argument and the trial court's findings were rejected by the Supreme Court after it considered two possibilities. First, the trial court might have believed "the evidence showed that plaintiff's injuries did not prevent her from *personally authorizing* [the attorney] to file a claim on her behalf." (*Draper*, *supra*, 52 Cal.3d at p. 508, italics added.) The Supreme Court reviewed the record of the plaintiff's injuries, coma and hospitalization and determined that "it is inconceivable that she could have authorized the filing of the claim." (*Ibid*.) Second, the trial court might "have inferred that someone other than plaintiff, with implied authority to do so, had retained [the attorney] for th[e] purpose" of presenting a claim. (*Ibid*.) The court noted there was no evidence that the attorney had actually been retained and then stated it would not "uphold the ruling on the basis of an assumption that some unnamed person retained [the attorney] to file a claim for plaintiff." (*Ibid*.)

In addition to its factual analysis of the evidence pertaining to the authorization issues, the court in *Draper* considered a statutory construction of section 946.6, subdivision (c)(3) proposed by the city. (*Draper*, *supra*, 52 Cal.3d at p. 509.) The court rejected that construction because it "would require us to add words to the [provision] so that the last clause would read, 'and by reason of such disability the injured person or someone with authority to appoint another to act on the injured person's behalf failed to present a claim' within the 100-day period. We cannot thus rewrite the statute." (*Ibid*.)

To summarize the relevance of *Draper* to the instant appeal, the court's interpretation of section 946.6, subdivision (c)(3) is not directly on point because its text does not refer to a person acting on behalf of the claimant. In contrast, the court's analysis of the two ways the attorney might have been authorized to present a claim on

the plaintiff's behalf is useful because that discussion supports inferences about what section 910's phrase "by a person acting on [the claimant's] behalf" means.

### 4. County of Los Angeles

The other case involving a claimant's assertion that a lawyer was not authorized to present a claim on her behalf is *County of Los Angeles*, *supra*, 127 Cal.App.4th 1263. There, the plaintiff, N.L., alleged she was sexually assaulted in late July and early August of 2001 by a county employee while housed in a juvenile facility. (*County of Los Angeles*, *supra*, at p. 1266.) N.L. was 17 years old at the time and turned 18 in October 2001. After her release from the facility, N.L. left the country and had no contact with her mother for about six months. Exactly six months after the first assault, a lawyer presented a claim to the county at the direction of N.L.'s mother. The lawyer had never met N.L. and was unaware of her location. In May 2002, the county mailed a letter to the lawyer stating N.L.'s claim had been deemed denied on March 14, 2002. (*Ibid*.) By August 2002, at the latest, N.L. learned of her mother's action. (*Id*. at p. 1272.) Based on the notice of the March 2002 rejection being mailed on May 30, 2002, the six-month limitations period expired on November 30, 2002. (*Ibid*.) N.L.'s personal injury complaint against county was filed on December 31, 2003; she was represented in the action by the firm of the lawyer who had presented the claim. (*Id*. at p. 1266.)

N.L.'s main argument as to the timeliness of the lawsuit was that Code of Civil Procedure section 340.1, which sets forth a special eight-year statute of limitations for childhood sexual abuse, provided the applicable limitations period, not section 945.6. (*County of Los Angeles*, *supra*, 127 Cal.App.4th at p. 1266.) The Second District rejected this argument, concluding the statute of limitations in the Government Claims Act governed. (*Ibid*.)

Of interest to the present appeal is N.L.'s argument that she was not bound by the lawyer's unauthorized presentation of a claim. (*County of Los Angeles*, *supra*, 127

Cal.App.4th at p. 1271.) The Second District assumed the unauthorized claim "was a nullity" and analyzed whether other actions by or on behalf of N.L. had complied with the claim presentation requirement of the Government Claims Act. Because an authorized claim was not presented within the six months specified in section 911.2, N.L.'s procedural remedy was to apply to the county for leave to present a late claim under section 911.4. Such an application must be presented within a reasonable time not to exceed one year after accrual of the cause of action. (§ 911.4, subd. (b).) N.L. had not presented a timely application for leave to present a late claim and this failure barred her lawsuit against the county. (*County of Los Angeles*, *supra*, 127 Cal.App.4th at p. 1272.)

As an alternate ground for rejecting N.L.'s argument that she was not bound by the unauthorized claim, the court stated that at no time did N.L. repudiate the claim "by seeking leave to [present] a late claim. Instead, N.L. filed a complaint, albeit an untimely one, in which she effectively ratified [the lawyer's] conduct by alleging that she was required to comply with the claims statute and in fact had done so." (*County of Los Angeles*, *supra*, 127 Cal.App.4th at p. 1272.) Based on this conclusion about repudiation and ratification, the court did not reach the county's argument "that nothing in the [Government Claims] Act requires the claimant to authorize the claim or be aware that a claim has been presented on her behalf." (*County of Los Angeles*, *supra*, at p. 1272, fn. 5.)

*County of Los Angeles* is easily distinguished from the instant appeal because *County of Los Angeles* did not involve the presentation of *both* an unauthorized claim and an authorized claim within six months after the cause of action accrued. Nonetheless, the discussion in that decision is useful here because it (1) identified (without resolving) the fundamental issue of whether a claimant's authorization is necessary for a claim to be presented "on [the claimant's] behalf" (§ 910); (2) raised the possibility that seeking leave to present a late claim would impliedly repudiate an unauthorized claim; and (3)

concluded that allegations in a complaint could ratify the presentation of a previously unauthorized claim.

     5.    *Lacy*

In *Lacy v. City of Monrovia* (1974) 44 Cal.App.3d 152 (*Lacy*), the plaintiffs filed a lawsuit against a city alleging police officers illegally entered their home and terrorized them. (*Id*. at p. 154.) The police were attempting to arrest a suspect and mistakenly entered the wrong house. (*Id*. at p. 153, fn. 1.) The husband submitted a claim for damages to the city, describing the injuries to himself, his wife, and their minor children. (*Id*. at pp. 153–154.) The city moved for summary judgment on the wife's and children's causes of action, contending only the husband had properly presented a claim. (*Id*. at p. 154.) The trial court concluded the claim presented was sufficient to support the causes of action by the husband and the minors, but not the wife. (*Ibid*.) The issue on appeal was limited to whether the claim presented by the husband was sufficient to support the wife's causes of action. (*Ibid*.)

The court identified the relevant statutory text by stating former "section 910 provides that a claim shall be presented by a claimant or '*by a person acting on his behalf*' and [former] section 910.2 provides that the claim shall be signed by claimant or '*by some person on his behalf.*' " (*Lacy*, *supra*, 44 Cal.App.3d at p. 155.) The court did not discuss the meaning of the phrase "on his behalf." It simply concluded that, based on the wording of the claim presented by the husband, it was clear that the claim was presented to the city "on his own behalf and on the behalf of his wife and children." (*Lacy*, *supra*, 44 Cal.App.3d at p. 155.)

The court also analyzed whether the claim presented by the husband accomplished the principal purposes of the claims presentation requirements, which it identified as giving notice to the public entity to afford it a timely opportunity to (1) investigate the claim and determinate the facts and (2) avoid unnecessary litigation by settling

meritorious claims. (*Lacy*, *supra*, 44 Cal.App.3d at p. 155.) The court concluded the contents of the claim gave the city all the notice and knowledge it needed about the wife's claim and stated the absence of a separate claim form was of no consequence. (*Ibid*.) The court noted that the claims requirement "was not intended to be used as a trap for the unwary" and that requiring the family members to present separate claims "would not serve the intended purposes of the claim statute and would result in unfairly precluding a determination of [the wife's] claim on its merits." (*Id*. at p. 156.)

*Lacy* is distinguishable from *Draper*, *County of Los Angeles*, and this appeal because the public entity in *Lacy* contended the claim was not presented on behalf of a claimant. In contrast, *Draper*, *County of Los Angeles*, and this appeal involves a claimant asserting that a claim was not presented on her behalf. *Lacy* is useful here because, although it did not explicitly discuss the meaning of the relevant statutory text, it set forth that text and stated the court's conclusion that the claim presented by the husband was "on the behalf of his wife and children." (*Lacy*, *supra*, 44 Cal.App.3d at p. 155.) Thus, *Lacy* provides an example of how to satisfy section 910's requirement that a claim be presented by a person acting on the claimant's behalf.

B.    Statutory Interpretation

The foregoing overview establishes the legal context for the particular issues of statutory construction related to the application of section 945.6's six-month statute of limitations. Stating those issues in general terms, we must decide on the appropriate test for determining whether a claim was presented "by a person acting on [the claimant's] behalf" (§ 910) and the legal effect, if any, of a claim that was not presented on the claimant's behalf.

1.    *Existence of Ambiguity*

The process of statutory construction begins with the words of the statute itself, giving them their usual and ordinary meaning. (*Mejia v. Reed* (2003) 31 Cal.4th 657,

22.

663.)  A court's inquiry into the usual and ordinary meaning of the words raises the threshold legal question of whether the words are ambiguous—that is, reasonably susceptible to more than one interpretation.  (*Merced Irrigation Dist. v. Superior Court* (2017) 7 Cal.App.5th 916, 926.)  The inquiry into ambiguity is focused, asking only whether the text is ambiguous in its application to the facts of the case, not whether the text is ambiguous in the abstract.  (*Verdugo v. Target Corp.* (2014) 59 Cal.4th 312 [generally, courts resolve questions of statutory construction presented on the factual record and did not address abstract questions of meaning].)

The statutory language in question requires the claim to "be presented by the claimant or by a person acting on his or her behalf."  (§ 910.)  The Government Claims Act does not define what it means to act on behalf of a claimant and, thus, does not identify the point of view used to decide the question.  Black's Law Dictionary (11th ed. 2019) provides multiple definitions of the phrase "*on behalf of*," stating it "means 'in the name of, on the part of, as the agent or representative of.' "  (*Id.* at p. 189.)  Under these definitions, it is unclear whose perspective is used to determine whether a person is acting on behalf of another.  Here, the parties have considered three possibilities—the claimant's perspective, the third person's perspective, or the public entity's perspective.  The possibility of using the perspective of someone other than the claimant was recognized in *County of Los Angeles*, but the issue was not decided.  (*County of Los Angeles*, *supra*, 127 Cal.App.4th at p. 1272, fn. 5 [public entity argued "that nothing in the [Government Claims] Act requires the claimant to authorize the claim"].)  Thus, *County of Los Angeles* implied the statutory text was ambiguous as to the perspective to be used, and it did not resolve that ambiguity.

Based on the foregoing, we conclude the words in section 910 are ambiguous as to whose perspective is used to determine whether the third party who presented the claim was "acting on [the claimant's] behalf."  (§ 910.)

23.

### 2. *The Claimant's Intent Controls*

When construing an ambiguous statute, a court's primary goal is to adopt the interpretation that best effectuates the legislative intent or purpose. (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1250; see *Lacy*, *supra*, 44 Cal.App.3d at p. 155 [claim presented accomplished the purposes of the claims statute].) Our Supreme Court has identified one of the legislative purposes of the Government Claims Act as the removal of traps for the unwary previously contained the labyrinth of claims statutes. (*Viles v. State* (1967) 66 Cal.2d 24, 31.) The court also acknowledged that " '[t]he 1963 legislation is remedial and should be liberally construed.' " (*Ibid*.) The Supreme Court has addressed section 946.6, which authorizes trial courts to grant relief to claimant where the public entity has rejected an application to file a late claim, and stated that particular provision is a remedial statute intended to provide relief from technical rules that otherwise would trap unwary claimants and identified the primary policy underlying that section as the policy favoring trial on the merits. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275–276 (*Bettencourt*).)

Here, we conclude an interpretation of section 910 must consider these overarching policies of the Government Claims Act, but also must give appropriate weight to the specific policies underlying the claim presentation requirements. (See generally, *Lincoln Unified Sch. Dist. v. Superior Ct*. (2020) 45 Cal.App.5th 1079, 1094–1095.) In other words, the interpretation adopted must not undermine the three purposes of the claim presentation procedure—that is, (1) providing the public entity with sufficient information to enable it to perform an adequate investigation of the claim and, if appropriate, settle it without the expense of litigation; (2) informing the public entity of potential liability so it can better prepare for the upcoming fiscal year; and (3) providing the public entity an opportunity to address a dangerous situation and avoid further injuries and litigation. (See pt. I.B.1., *ante*.)

We first consider the closeness of the connection between these three purposes of the claim presentation requirements and the issue of whether a claim was presented on the claimant's behalf. There appears to be little connection because the notice function is fulfilled by the timing and contents of the claim, not whether it is deemed to be presented on the claimant's behalf. The timing and contents of a claim are addressed in detail in section 910 and, if the claim omits required information, the Government Claims Act allows the public entity to waive the defects or provide notice to the claimant or presenter so the defects may be cured. (§ 910.8; see § 910.6, subd. (a) [amendment of claim].) Because the three purposes of providing prompt notice are fulfilled by the timing and content requirements of the Government Claims Act, it logically follows that the Legislature had other reasons for requiring a third person who presented a claim to be "acting on [the claimant's] behalf." (§ 910.) The parties have not cited, and we have not located, any source identifying the specific reasons for the requirement. Therefore, we conclude those reasons must include, at least in part, promoting the general policies underlying the Government Claims Act.

Before addressing the impact of those general policies on the interpretation of section 910, we consider the inferences that can be drawn from our Supreme Court's analysis in *Draper*. For instance, the court referred to "an attorney, purporting to act on [the claimant's] behalf." (*Draper*, *supra*, 52 Cal.3d at p. 504.) The use of the term "purporting to" strongly implies that it is the claimant's intent, not the third party's intent, that determines whether a claim is presented on the claimant's behalf. The court also discussed the possibility that the claimant had authorized the attorney to present the claim in question and the possibility that someone else, with claimant's implied authorization, had retained the attorney for the purpose of presenting a claim. (*Id*. at p. 508.) This discussion also implies that the presentation of the claim must be authorized by the claimant, either directly or indirectly by delegating the power to authorize the presentation of a claim to someone else.

25.

Interpreting *Draper* to mean the claimant's intent determines whether the claim was presented by a person "acting on [the claimant's] behalf" (§ 910) fits within the broader statutory scheme because claimants are the ones who must comply with the claim presentation requirements of the Government Claims Act or suffer the consequences of noncompliance. Because the claimant has that responsibility, it makes sense to adopt a statutory construction that gives the claimant control over the acts needed to comply with the claim presentation requirements. In addition, a statutory construction that places the claimant in control avoids the possibility of third parties intentionally or inadvertently setting traps for an unwary claimant.[8] Thus, we conclude a statutory construction that places the claimant in control of whether the claim was presented "on his or her behalf" (§ 910) promotes the general policies of eliminating potential traps for the unwary and resolving claims on their merits. (See *Bettencourt*, *supra*, 42 Cal.3d at pp. 275–276.)

Consequently, we interpret section 910 to mean that a claim is presented "by a person acting on [the claimant's] behalf" if the claimant knowingly and intentionally authorized the third person to present it or, alternatively, if the claimant knowingly and intentionally ratified the claim *after* it was presented to the public entity.[9] Allowing the

---

[8] A hypothetical illustrating such an intentional trap involves a negligent public employee who, without the claimant's knowledge and shortly after causing the accident, submits a claim that purports to be on behalf of the claimant. If such a claim is considered valid, it would start the 45-day period for the public entity to accept or reject the claim. In turn, a rejection notice sent to whatever address the public employee listed would start the statute of limitations and that early start might cause the limitations period to expire before the claimant files suit.

[9] "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73.)

We have not referred to the principles of agency law in Civil Code sections 2295 through 2357 in resolving how to interpret the Government Claims Act because the policies underlying the enactments are different and the better course is to resolve the ambiguity in the Government Claims Act based on its underlying policies and purposes.

26.

claimant to ratify a claim (1) provides flexibility to claimants without compromising the specific purposes of the claim presentation requirement and (2) promotes the general policies of the Government Claims Act.

### 3. *Legal Effect of Unauthorized, Unratified Claims*

Another question of statutory interpretation arising from the facts of this case is whether an unauthorized, unratified claim has any legal effect. If such a claim has no legal effect, a rejection notice from the public entity also would have no effect and, thus, would not start the six-month statute of limitations. As stated earlier, the Government Claims Act does not address the subject of claims that are presented by someone who is not acting on the claimant's behalf. To resolve the question, we must undertake the "task of filling in the gaps in the statutory scheme." (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 378.)

Treating an unauthorized, unratified claim as a nullity would not, in our view, undermine the three purposes served by requiring prompt notice of a claim. If the unauthorized claim has no force or effect, the claimant remains obligated to comply with the claim presentation requirements in the Government Claims Act. Accordingly, the claimant still must present an authorized claim within six months from the accrual of the cause of action or, alternatively, obtain leave to present a late claim. Thus, for claimants who comply by timely presenting an authorized claim, treating an unauthorized claim as a nullity would result in the public entity being notified twice. It is self-evident that doubling the notice received by a public entity would not hinder its ability to (1) adequately investigate the claim, (2) budget for the potential liability, or (3) remedy a dangerous condition or practice. (See pt. I.B.1., *ante*.) Also, treating the unauthorized, unratified claim as a nullity eliminates potential traps for the unwary and promotes the resolution of claims on their merits.

27.

The possibility that unusual situations might arise where public entities are harmed by this statutory interpretation can be addressed by applying California's doctrine of equitable estoppel. It is well settled that equitable estoppel may be applied *against* the public entity in the government claims context. (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445.) We have identified no compelling reason to exempt claimants from the doctrine. Thus, equitable estoppel will protect public entities that have relied on an unauthorized claim to their injury when the other estoppel elements are satisfied. (See *J.M. v. Huntington Beach Union High School Dist., supra,* 2 Cal.5th at p. 656 [elements of equitable estoppel].)

To summarize, we interpret the Government Claims Act to mean that an unauthorized, unratified claim has no legal effect. Furthermore, the public entity's notice of rejection of an unauthorized, unratified claim has no legal effect and, thus, does not trigger the six-month statute of limitations.

C.    Application of Statutory Interpretation to the Facts

The parties dispute whether Lark Chiropractic presented the claim on plaintiff's behalf for purposes of section 910. To resolve this dispute, we identify the facts established by the record and answer a series of issues about authorization, ratification and repudiation.

*1.    Authorization of the Presentation of the Claim*

District contends the claim was presented on plaintiff's behalf because she signed it, she is an adult, and adults are responsible in the eyes of the law for their actions. District argues plaintiff's signature authenticated the claim and, therefore, the claim is valid.

Plaintiff contends authenticating a claim and authorizing a third party to present the claim are two distinct acts. This distinction is recognized in the structure and text of the Government Claims Act. The signature requirement is addressed in section 910.2 and

28.

the presentation requirement is addressed in section 910. The distinction between signing and presenting also is reflected in the first amended complaint, which treats the act of signing the claim as separate from the act of knowingly and intentionally authorizing Lark Chiropractic to present the claim to District. In particular, paragraph eight of that pleading alleges Lark Chiropractic presented "a Claim for Damages on Plaintiff's behalf, without her understanding, knowledge or permission inasmuch as Plaintiff thought she was signing medical lien forms." Paragraph 16 alleges that Berglund & Johnson "are, and have been, the only persons authorized or given permission by the Plaintiff to [present] a government claim on her behalf."

Applying the principle that pleadings are given a reasonable construction in favor of the pleader, we cannot infer that plaintiff knowingly and intentionally authorized the claim to be presented to District by Lark Chiropractic merely because she signed it. Such an inference about plaintiff's actual intent is contradicted by her allegations that Lark Chiropractic presented the claim "without her understanding, knowledge or permission" and that her attorneys were "the only persons authorized" by her to present a claim on her behalf. We accept the truth of these allegations and, under the principles governing demurrers and appellate review, conclude plaintiff did not knowingly and intentionally authorize—either expressly or impliedly[10]—Lark Chiropractic to present the signed claim to District on her behalf.

---

**10**      We conclude a claimant's actual intent to authorize the presentation of a claim may be expressed in words or implied by conduct. This approach to actual intent is similar to that taken in contract law where the manifestation of the mutual intent necessary to form a contract may be expressed in written or spoken words or implied by conduct. (See Civ. Code, §§ 1550 [parties' consent is an essential element of contract formation], 1565 [consent must be free, mutual and communicated by each party to the other], 1619 [express or implied contracts], 1620 [express contract's terms are stated in words], 1621 [implied contract's terms are "manifested by conduct"], 1622 [oral contracts].)

District's argument seems to urge the creation of a rule of law stating that when a claim satisfies the signature requirement in section 910.2 because the claimant signed it, a third party's presentation of the claim is, as a matter of law, by "a person acting on [the claimant's] behalf" for purposes of section 910. We reject such a rule of law because it conflates to the statutory text, which separates the signature and the presentation requirements. Also, such a rule of law would allow for situations where the notice function of the claim requirements has been fulfilled and, nonetheless, a meritorious claim is barred. Thus, interpreting the Government Claims Act as containing such a rule of law would violate basic canons of statutory interpretation and undermine the purposes of the act.

### 2. *Ratification of the Presentation of the Claim*

We next consider the question of whether plaintiff expressly or impliedly ratified the claim *after* it was faxed to District. In this context, ratification is the claimant's voluntary election to adopt as his or her own an act another person's presentation of a claim covering the claimant's injuries. (See *Rakestraw v. Rodrigues, supra,* 8 Cal.3d at p. 73 [definition of ratification].) Thus, like authorization, ratification must be done knowingly and intentionally.

The first amended complaint did not explicitly mention whether or not the claim presented by Lark Chiropractic was ratified by plaintiff. Also, the first amended complaint did not effectively ratify that claim by relying on it to allege compliance with the claim presentation requirement. (See *County of Los Angeles*, *supra*, 127 Cal.App.4th at p. 1272 [claimant "effectively ratified [the lawyer's] conduct by alleging that she was required to comply with the claims statute and in fact had done so"].) Paragraph 16 of the first amended complaint did allege Berglund & Johnson "are, and have been, the only persons authorized or given permission by the Plaintiff to [present] a government claim on her behalf." Applying a liberal yet reasonable interpretation to the allegation about

30.

the "only persons authorized" to present a claim on plaintiff's behalf, we infer plaintiff's words or conduct did not ratify the claim after it was presented by Lark Chiropractic. Stated another way, based on what clearly and affirmatively appears on the face of the complaint and matters judicially noticed (*Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42), the question of ratification cannot be resolved against plaintiff at the pleading stage.

### 3. *Repudiation of the Claim*

Our statutory interpretation that an unauthorized, unratified claim has no legal effect necessarily leads to the conclusion that a claimant does not need to repudiate such a claim. (See pt. II.B.3., *ante*.) Nevertheless, because *County of Los Angeles* and the leading treatise discuss repudiation of an unauthorized claim, we consider whether plaintiff repudiated the claim presented by Lark Chiropractic.

Here, Berglund & Johnson presented an authorized claim to District "not later than six months after the accrual of the cause of action." (§§ 911.2, subd. (a), 945.4.) We conclude the timely presentation of an authorized claim operates as an implied repudiation of an unauthorized claim so long as the repudiation does not cause the public entity undue prejudice. In *County of Los Angeles*, the court suggested that the claimant could have repudiated the unauthorized claim "by seeking leave to [present] a late claim." (*County of Los Angeles*, *supra*, 127 Cal.App.4th at p. 1272.) Here, plaintiff did not need to apply for leave to present a late claim because her attorneys presented a claim within the claim period. If an application for leave to present a late claim repudiates an unauthorized claim, parity of reasoning leads to the conclusion that the timely presentation of an authorized claim also repudiates the unauthorized claim because that timely presentation renders an application for leave unnecessary. In addition, the filing of this lawsuit operated as a repudiation of the claim presented by Lark Chiropractic because plaintiff relied on the authorized claim filed by her attorneys to allege

31.

compliance with the Government Claims Act and she alleged that the claim presented by Lark Chiropractic was not authorized by her.

Next, we consider what constitutes undue prejudice. We further conclude that, in the context of the claim presentation requirements, undue prejudice is detriment to the public entity's ability to defend on the merits or to fulfill the legislative purposes underlying the claim presentation requirements. As stated earlier, claims are designed to provide early notice and allow the public entity to (1) perform an adequate investigation of the claim and, if appropriate, settle it without the expense of litigation; (2) take the potential liability into account in its budgeting process; and (3) address a dangerous situation and avoid further injuries and litigation. (See pt. I.B.1., *ante*.) Undue prejudice to the ability to defend might arise due to the loss of evidence or the unavailability of a witness. We reject District's argument that the loss of a statute of limitations defense is a type of prejudice that should preclude the repudiation of an unauthorized claim in cases such as this one where an authorized claim was presented within the six-month claim period.

Consequently, where the legislative purposes underlying the claim presentation requirements are fulfilled and the public entity's defense on the merits has not been compromised, there is no undue prejudice from a claimant's repudiation of an unauthorized claim. District's broad approach to prejudice would bar claimants who have fallen into a trap from pursuing meritorious claims despite the fulfillment of the legislative purposes underlying the claim presentation requirements.

Applying the foregoing conclusions about repudiation to the allegations in the first amended complaint and the matters subject to judicial notice, we conclude District has not clearly and affirmatively established it would be unduly prejudiced by the repudiation of the claim submitted by Lark Chiropractic. Furthermore, it will be difficult for District to establish any prejudice in its defense of the lawsuit on the merits because two other lawsuits were filed against District for the same collision before January 19, 2018—the

32.

date the six-month statute of limitations would have expired if the claim presented by Lark Chiropractic had been valid.

### 4. Summary

We conclude the claim Lark Chiropractic faxed to District on June 5, 2017, was not a claim presented "by a person acting on [plaintiff's] behalf" for purposes of section 910 or, alternatively, it was impliedly repudiated when Berglund & Johnson filed a timely claim on plaintiff's behalf and when this lawsuit was filed. Either way, the claim submitted by Lark Chiropractic is a nullity and, therefore, is invalid with no force or effect. As a result, District's July 2017 notice rejecting the claim presented by Lark Chiropractic also is a nullity and has no legal effect. One consequence of the rejection notice being a nullity is that it did not start the six-month statute of limitations set forth in section 945.6, subdivision (a)(1).

In comparison, the claim prepared by Berglund & Johnson was presented on plaintiff's behalf and was timely—that is, it was submitted to District within the applicable six-month presentation period. Therefore, that claim was valid and is the only operative claim for purposes of this lawsuit. We assumed for purposes of analyzing the application of the six-month statute of limitations in section 945.6, subdivision (a)(1) that the six-month period began running when that claim was deemed rejected by District's failure to act on the claim within 45 days after its presentation. The deemed rejection occurred in November 2017, which is less than six months before plaintiff filed her complaint on April 2, 2018. Consequently, even if District is given the benefit of the assumption about when the statute of limitations started to run, plaintiff's lawsuit is timely because it was filed before the six-month statute of limitation in section 945.6, subdivision (a)(1) expired.

III.    DISTRICT'S DEFECTIVE NOTICE OF REJECTION

Alternatively, plaintiff contends her lawsuit is timely even if the claim presented by Lark Chiropractic was valid because District's rejection notice was not given in the manner prescribed by section 915.4 and, therefore, the two-year statute of limitations set forth in section 945.6, subdivision (a)(2) applies to her negligence cause of action. We agree.

Section 913, subdivision (a) provides written notice of rejection of a claim "or the inaction that is deemed rejection under Section 912.4 *shall* be given in the manner prescribed by Section 915.4." (Italics added.) Section 915.4, subdivision (a) states notices "shall be given by any of" three specified methods. The method District attempted to use was notice by mail. The statute allows "[m]ailing the notice to the address, if any, stated in the claim … as the address to which the person presenting the claim … desires notices to be sent or, if no such address is stated in the claim …, by mailing the notice to the address, if any, of the claimant as stated in the claim …." (§ 915.4, subd. (a)(2).)

The claim submitted by Lark Chiropractic did not state an address to which desired notices should be sent. As a result, the mailing address required by statute was "the address … of the claimant as stated in the claim." (§ 915.4, subd. (a)(2).) This text is not ambiguous in its application to the facts of the case, and District has not argued otherwise. Applying the plain meaning of the statute, the required mailing address was plaintiff's post office box in Frazier Park. Instead of mailing the notice of rejection of claim dated July 19, 2017, to that address, Schools Insurance Authority mailed it to Berglund & Johnson's address in Woodland Hills. Therefore, the record establishes that the mailing of the rejection notice was not in accordance with the unambiguous statutory requirement because the notice was not mailed to the address specified in section 915.4, subdivision (a)(2).

Defendants argued in the trial court that they were precluded from communicating directly with plaintiff once she retained counsel and, therefore, they could not mail the notice of rejection to her post office box. The trial court's ruling and the respondent's brief cite no authority to support this interpretation of section 915.4. Our preliminary research located no authority for the principle that the rejection notice satisfied the mailing requirements if it was sent to the claimant's attorney instead of an address stated in the claim. Consequently, before oral argument we sent counsel a letter asking if there was any legal authority, such as a statute, judicial decision or other source, supporting the interpretation that the rejection notice was required to be given to claimant's attorneys. Our letter also stated: "Counsel should be familiar with Rule 4.2(a) of the California Rules of Professional Conduct and should be prepared to address whether that rule requires the mailing of the notice of rejection to the claimant's attorney." Rule 4.2(a) of the State Bar Rules of Professional Conduct states: "In representing a client, a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer."

During oral argument, counsel for District did not refer the court to any other authority. Instead, he represented that Reynolds was member of the legal department handling plaintiff's claim and argued that Reynolds, as an employee of the legal department, was required to comply with the rule. The rationale offered was that attorneys cannot circumvent the rule by having their staff contact another lawyer's client, an interpretation supported by the rule's reference to indirect communications.

We reject District's interpretation of the mailing requirement in section 915.4 because it is contrary to the plain meaning of that provision's text and District is not an attorney bound by that rule. In *Draper*, the Supreme Court considered the defendant's nonliteral interpretation of a provision in the Government Claims Act and rejected it by stating: "We cannot thus rewrite the statute." (*Draper*, *supra*, 52 Cal.3d at p. 509.)

Based on the Supreme Court's approach to interpreting the Government Claims Act and the Legislature's directive in Code of Civil Procedure section 1858, we adopt the plain meaning of section 915.4, subdivision (a)(2) and conclude the notice of rejection was required to be mailed to plaintiff's post office box. In short, Government Claims Act does not allow a public entity to place itself outside the mailing requirements of the statute by choosing to have an attorney or a legal department handle the rejection notice.

We conclude that District's written rejection notice was not given in accordance with sections 913 and 915.4 and, therefore, plaintiff's lawsuit is subject to the two-year statute of limitations contained in section 945.6, subdivision (a)(2). Her action is timely because it was filed less than 11 months after the traffic accident. Consequently, the demurrer based on the statute of limitations should have been overruled.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order sustaining the demurrer without leave to amend and to enter a new order overruling the demurrer. Plaintiff shall recover her costs on appeal.

FRANSON, ACTING P. J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

36.